## A95A0475. JEFFERSON v. THE STATE.
(459 SE2d 173)

SMITH, Judge.

In 1990, Eddie Jefferson was arrested for rape, and he subsequently was convicted for three rapes and related offenses. His arrest followed the third offense, which occurred in Turner County, Georgia, during the early morning hours of the day of Jefferson's eventual arrest. One of the other rapes also occurred in Turner County in late December 1989. This appeal involves the first of these incidents, which also occurred in December 1989, but in Irwin County.

Jefferson was first tried and convicted for the Turner County rapes and several factually related offenses. He appealed from those convictions, but raised no meritorious claims of error. See *Jefferson v. State*, 206 Ga. App. 544 (425 SE2d 915) (1992) (*Jefferson I*). After his unsuccessful appeal in *Jefferson I*, Jefferson was tried and convicted for the Irwin County rape as well as factually related offenses of burglary and possession of a knife during the commission of a felony. The same judge presided over both the Turner and Irwin County trials, and Jefferson was represented by the same counsel at both trials and in the appeal in *Jefferson I*. With the assistance of substituted counsel, Jefferson moved for a new trial following his conviction

in the Irwin County case.[1] He alleged, among other things, that he received ineffective assistance of counsel at trial because of trial counsel's failure to suppress the fruits of what he contends was an illegal arrest without probable cause. The motion was denied following a hearing in which both Jefferson and his trial counsel testified. Jefferson subsequently brought this appeal from his conviction in the Irwin County case. We reverse.

The background surrounding Jefferson's apprehension and formal arrest is as follows. The "1990 victim" referred to in *Jefferson I* was raped at knifepoint during the early morning hours of August 2, 1990. Early that same morning witnesses saw Jefferson attempting to remove his truck from a ditch less than half a mile from the scene of the crime. Although police did not consider Jefferson a suspect at the time, they "were looking for him in regard to" their investigation. Jefferson was seen later that day in neighboring Worth County. Police pulled him over by flashing their "blue lights." With weapons showing, they approached Jefferson and told him that there was "an investigation underway from Turner County" and that they wished to talk to him about it at the police station. Jefferson complied and was subsequently driven to the Worth County Sheriff's office. Jefferson's truck and his two children were driven to his mother's house.

No *Miranda* warnings were read to Jefferson before he was "interviewed" because, according to police, the questioning was merely "exploratory" in nature and they had no information that would authorize them to detain Jefferson should he decide to leave the police station at any time. During this questioning, Jefferson's voice was identified by the victim of the rape under investigation, and Jefferson was formally arrested based on this identification. Other inculpatory evidence gathered at or near that time included the shoes Jefferson was wearing and, pursuant to a search warrant issued a few days later, samples of his head and pubic hair. Jefferson's photograph was also taken at that time and was subsequently used in a photographic lineup. This evidence was later used in presenting the State's respective cases against Jefferson in both the Turner and Irwin County trials.[2]

---

[1] Specifically, following his conviction, Jefferson's trial counsel filed a timely motion for new trial, which was initially denied. Jefferson then moved pro se for substitution of appointed counsel and for an evidentiary hearing to determine the effectiveness of his trial counsel. Trial counsel facilitated the hearing of Jefferson's motion by filing a motion for extension of time to file Jefferson's notice of appeal, which was granted. OCGA § 5-6-39 (a) (1). Within the period of the extension, the trial court entered an order substituting appointed counsel and, on its own motion, staying its previous order denying Jefferson's original motion for new trial. See *Austin v. Carter*, 248 Ga. 775, 776-777 (1) (285 SE2d 542) (1982). Jefferson's substituted counsel filed an amended motion for new trial, and a hearing on the matter followed.

[2] Although neither the State nor Jefferson suggests otherwise, we note that the issues

A *Jackson v. Denno* hearing was held during the Turner County trial to determine the voluntariness of the statements Jefferson made to police immediately prior to his formal arrest. The trial court obviously did not accept the State's theory that there was no need to read Jefferson his *Miranda* warnings because the statements were not the product of a custodial interrogation. To the contrary, the trial court observed that "[t]here is no question in the court's mind but that he was in custody from the time that he was stopped with the blue lights. And I think the law backs that up wholeheartedly." Nevertheless, the trial court went on to observe that Jefferson "was not the target of the investigation . . . until the probable cause arose from the reaction of the victim. . . . With that type of thing, I overrule the objection to the testimony on the ground that it was not — while it was an in-custody [statement], there was nothing inculpatory said in it. Now, if there was something inculpatory, I think the court will be committing a grievous error."

Jefferson, through substituted counsel, argues that the court's ruling during the Turner County trial suggested a substantial issue regarding whether police subjected him to a custodial interrogation following an illegal arrest rather than a purely "consensual" police station interview at the time Jefferson's statements were taken. If so, Jefferson contends, then even though he made no inculpatory statement at that time for the purposes served by a *Jackson v. Denno* hearing, the voice identification made during the statements originally at issue, the shoes taken from Jefferson, and other inculpatory evidence acquired as a result of that illegal arrest were suppressible fruits of that arrest; he asserts his trial counsel therefore was ineffective in failing to take appropriate steps to exclude such evidence at trial.

1. "Under the holding in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), there is a two-pronged test for determining the validity of a claim of ineffective assistance of counsel: whether (1) counsel's performance was deficient; and whether (2) this deficiency prejudiced the defense (there is a reasonable possibility that the outcome of the proceedings would have been different, but for counsel's deficiency). [Cit.]" *Thompson v. State*, 188 Ga. App. 508, 509 (373 SE2d 292) (1988). Applying that familiar standard to this case requires us to consider first whether Jefferson was illegally seized prior to his formal arrest, and if so, whether the evidence at issue was gathered as the direct result of that illegal seizure. If both

presented in this case would have applied with equal force had they been presented for review in *Jefferson I*. But the question of whether Jefferson received effective assistance of counsel during the Turner County trial was not raised in *Jefferson I*, and it is now beyond this court's scope of appellate review.

questions are answered in the affirmative, we must then consider whether the impact of the evidence admitted without proper objection was such that there is a reasonable possibility that Jefferson may have been acquitted had that evidence been excluded from trial. Since we find each of these questions must be answered in the affirmative, we are constrained to conclude that Jefferson did not receive effective assistance of counsel in this case.

(a) "The purpose of a *Jackson v. Denno* hearing is to allow 'the trial court in the first instance, as, a matter of law, and the jury, ultimately, as a matter of fact, to assure themselves of the voluntariness of a statement. . . .' [Cit.]" *Hart v. State*, 193 Ga. App. 834, 835 (389 SE2d 400) (1989). We may safely assume that purpose was served during the Turner County trial with respect to the admissibility of Jefferson's statements to police since that issue is not now before us. But by arguing that *Miranda* warnings were not given to Jefferson before "interviewing" him because he was not then a suspect, the State has essentially acknowledged that Jefferson was indeed illegally seized "from the time that he was stopped with the blue lights," just as the trial court observed.

At first blush, the facts of this case and the contentions of the parties are similar to the underlying facts and points of view espoused in *Dunaway v. New York*, 442 U. S. 200 (99 SC 2248, 60 LE2d 824) (1979). In *Dunaway*, as in the present case, the police brought the petitioner in for questioning purely for investigatory purposes without probable cause to arrest him. Finding a Fourth Amendment violation, the majority in *Dunaway* observed that "[t]he mere facts that petitioner was not told he was under arrest, was not 'booked,' and would not have had an arrest record if the interrogation had proved fruitless . . . obviously do not make petitioner's seizure even roughly analogous to the narrowly defined intrusions involved in *Terry*[3] and its progeny. Indeed, any 'exception' that could cover a seizure as intrusive as that in this case would threaten to swallow the general rule that Fourth Amendment seizures are 'reasonable' only if based on probable cause." Id. at 212-213.

The dissenters in *Dunaway* apparently differed only with the majority's factual analysis, concluding that the petitioner voluntarily accompanied the police to the station and that his Fourth Amendment rights therefore were not implicated.[4] The State essentially urges that

---

[3] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[4] "In this case three police officers were dispatched to petitioner's house to question him about his participation in a robbery. According to the testimony of the police officers, one officer approached a house where petitioner was thought to be located and knocked on the door. When a person answered the door, the officer identified himself and asked the individual his name. . . . After learning that the person who answered the door was petitioner, the officer asked him if he would accompany the officers to police headquarters for questioning,

same position here, arguing that Jefferson voluntarily accompanied the officers to the police station in an apparent spirit of cooperation. We do not reach the State's argument since we must conclude that Jefferson, unlike the petitioner in *Dunaway*, had already been subjected to an illegal seizure before he "consented" to accompany police to the station for questioning.

"Although an officer may conduct a brief investigative stop of a vehicle [cit.], such a stop must be justified by 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' [Cits.] The U. S. Supreme Court recognized the difficulty in defining 'the elusive concept of what cause is sufficient to authorize police to stop a person,' and concluded that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' [Cit.] 'This demand for specificity in the information upon which police action is predicated is the central teaching of (the Supreme Court's) Fourth Amendment jurisprudence.' [Cit.]" *Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994).

Here, there is simply no legitimate dispute as to whether Jefferson was stopped based on a reasonable suspicion of criminal activity. According to prior arguments and testimony offered by the *prosecution* in the Turner County case, Jefferson was not Mirandized prior to his "exploratory interview" with police because he simply was not a suspect until his voice was identified by the victim of the 1990 rape. Indeed, even after Jefferson admitted during questioning to being in the area near the time of the rape, the interrogating officer claimed he did not consider that an inculpatory statement because "[i]t's not a crime to be near something."

Despite the testimonial evidence to the contrary and without citing to the record, the State now contradicts the position taken at the Turner County *Jackson v. Denno* hearing, arguing that "[Jefferson's] initial stop in Worth County, Georgia on August 2, 1990, was justified by specific, articulable facts giving rise to a reasonable suspicion that [Jefferson] was the perpetrator of the rape of [the 1990 victim]." The State makes no attempt to offer an explanation for this patent and disturbing departure from its original position that Jefferson was not a suspect at the time he was stopped, and we can conjure none.

---

and petitioner responded that he would. . . . Petitioner was not told that he was under arrest or in custody and was not warned not to resist or flee. No weapons were displayed and petitioner was not handcuffed. Each officer testified that petitioner was not touched or held during the trip downtown; his freedom of action was not in any way restrained by the police." Id. at 222-223 (Rehnquist, J., dissenting).

*At most*, the State shows that it had evidence which, if known to the officers at the time Jefferson was stopped in Worth County, would have constituted reasonable suspicion that Jefferson was engaged in criminal activity several hours earlier. But all of the testimony in the record before us contradicts the State's position in this appeal regarding what the arresting officers knew and did not know at the time they stopped Jefferson's truck. It therefore follows that any purported consent Jefferson may have given to being transported to the police station after being stopped was tainted by his prior illegal arrest. It likewise follows that Jefferson's trial counsel should have pursued a motion to suppress based on the illegal stop *regardless* of whether Jefferson indicated to him that he indeed consented to be interviewed at the police station thereafter.

Even if the stop were not per se a violation of Jefferson's Fourth Amendment rights under *Vansant*, supra, and the authorities cited therein, the facts here differ greatly from those in *Dunaway*, supra. The "request" for Jefferson to accompany the police to the station to assist in an investigation came under circumstances far more coercive than the situation described by the dissenters in *Dunaway*. Jefferson was forcibly stopped by armed police officers who, without probable cause or even reasonable suspicion, "requested" that Jefferson assist in their investigation by accompanying them to the police station for an interview. Under *any* circumstances such a request " 'may easily carry an implication of obligation, while the appearance itself, unless clearly stated to be voluntary, may be an awesome experience for the ordinary citizen.' " *Dunaway*, supra at 207, n. 6. But under the circumstances presented in this case, we agree "wholeheartedly" with the skepticism expressed by the trial court on the issue of Jefferson's purported consent to be "interviewed."[5]

(b) That the items of evidence at issue here would not have been gathered but for the fact that Jefferson was subjected to an illegal arrest does not alone decide whether they should be suppressed. "The question then is whether the evidence sought to be suppressed is the result of exploitation of the illegality or is sufficiently attenuated from the illegality to be purged thereof. [Cits.]" *Burnham v. State*, 265 Ga. 129, 131 (3) (453 SE2d 449) (1995). But the burden on this issue rests squarely with the prosecution, id., and the State has made no showing that the evidence at issue was not obtained by exploitation of Jeffer-

---

[5] As the trial court observed at the Turner County *Jackson v. Denno* hearing: "Well, let me say this: I can see how friendly a fellow might become if he saw someone with a .44 magnum on the side and say, I'd certainly appreciate it for the donation of the contents of your cash drawer to me. I'm sure that you're perfectly, you know, willing — I'm willing for you not to accede to my request — this courteous request — I'm making. I can see how I might just say, well, yes, sir, you can have it, with my blessings even though he didn't pull the gun on me when I wasn't armed."

son's illegal arrest. Compare *Ruffin v. State*, 201 Ga. App. 792, 793 (2) (a) (412 SE2d 850) (1991). Our own review of the evidence shows that the patently illegal arrest and the subsequent acquisition of the incriminating evidence at issue were closely connected in time and that during that brief period, no intervening event served to purge the taint of Jefferson's illegal seizure. Moreover, we cannot ignore the fact that the State has essentially argued in various proceedings that the police reasonably suspected that Jefferson committed the rape when they stopped him, yet he was not a suspect at all once he agreed to be "interviewed."

We conclude that Jefferson's trial counsel erred in failing to pursue a motion to suppress or otherwise object to the admission of the 1990 victim's voice identification made the day of the rape, the samples of Jefferson's head and pubic hair, Jefferson's photograph, and the shoes taken from him the day of his arrest based on the illegality of that arrest. Trial counsel's stated belief that Jefferson consented to be interviewed does not suffice to explain this omission, since that consent (even if otherwise valid) was obtained only as the result of the illegal seizure of Jefferson's person without reasonable suspicion that Jefferson was engaged in illegal activity. "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." (Citations and punctuation omitted.) *Vansant v. State*, 264 Ga. at 321 (quoting *Terry v. Ohio*, supra at 9). That right was not sufficiently guarded by Jefferson's trial counsel in this case.

(c) The remaining question is whether there is a reasonable likelihood that Jefferson would have received a more favorable verdict but for trial counsel's failure to suppress evidence tainted by the illegal seizure of Jefferson's person. *Thompson v. State*, supra. Jefferson contends that without the tainted evidence the State would have been limited to the in-court identification of him by the victim and the similar transaction witnesses. Jefferson further contends this identification was "attacked vehemently" by the defense and was clearly not the sole basis upon which the jury reached its conclusion.

The State presents no response to Jefferson's contentions, apparently conceding the substantial evidentiary value of the items at issue. We cannot conclude under these circumstances that the outcome would necessarily have been the same despite trial counsel's professional errors. Jefferson has shown that he was deprived of his right under the Sixth Amendment to effective assistance of counsel at the Irwin County trial, and we therefore reverse and remand for retrial.

2. For purposes of retrial, we agree with Jefferson that photographs depicting the beating received by one of the Turner County

rape victims should not have been introduced as similar transaction evidence in this case because the victim in this case was not beaten in a similar fashion. In *Jefferson I*, we found no error in the introduction of the same photographs at issue here because we concluded that the "photographs were necessary to fully depict the extent of [the 1989 victim's] injuries" despite their tendency to "inflame and prejudice the jury." Id. at 548-549.

Jefferson has already been convicted of the aggravated assault depicted in the photographs at issue, and it is a crime dissimilar to any alleged in the present case. Any probative value such photographs might have had in showing that an offensive weapon was used during the 1989 Turner County rape as well as the other two rapes was far outweighed by its prejudicial impact on the jury. See generally *Roose v. State*, 182 Ga. App. 748, 749 (1) (356 SE2d 675) (1987) (physical precedent only). There was no error in allowing the 1989 Turner County victim to testify regarding the circumstances surrounding the rape committed against her under the standard of *Williams v. State*, 261 Ga. 640, 641-643 (2) (409 SE2d 649) (1991), but it was clearly improper to emphasize a wholly dissimilar and inflammatory aspect of that event by photographic evidence.

3. Jefferson's remaining enumeration is without merit.

*Judgment reversed and remanded. Birdsong, P. J., and Johnson, J., concur.*

DECIDED JUNE 23, 1995 —
RECONSIDERATION DENIED JULY 10, 1995 — 

*Landrum & Eidson, L. Clark Landrum, Timothy L. Eidson*, for appellant.

*C. Paul Bowden, District Attorney, Gary C. McCorvey, Assistant District Attorney*, for appellee.