## A00A0649. GODDARD v. THE STATE.
### (536 SE2d 160)

ANDREWS, Presiding Judge.

Ross M. Goddard appeals from the judgment entered on the jury's verdict of guilty of driving under the influence of alcohol to the extent that it was less safe for him to drive (OCGA § 40-6-391 (a) (1)) and driving with an unlawful alcohol concentration (OCGA § 40-6-391 (a) (5)).[1]

Although Goddard enumerates six errors, they are not argued separately or in sequence in violation of Court of Appeals Rule 27 (c) (1). Nonetheless, exercising our duty under *Felix v. State*, 271 Ga. 534 (523 SE2d 1) (1999), we address the arguments made regarding the enumerations as best we discern them.

1. Goddard's first enumeration is that the trial court erred in not granting his motion to suppress the results of his Intoxilyzer 5000 breath test, while the second is that the court erred in admitting the

---

[1] The two counts were merged for purposes of sentencing.

Intoxilyzer results. They are considered together.

The motion to suppress filed below was premised solely on Goddard's contention that he was not guilty of the offense of striking a fixed object which the officer was initially investigating and, therefore, the Intoxilyzer results should have been suppressed. This is not an appropriate ground for a motion to suppress. OCGA § 17-5-30 (a); *State v. Johnston*, 249 Ga. 413, 414 (3) (291 SE2d 543) (1982). Any challenge to the procedures used in reading Goddard his statutory implied consent warning, OCGA § 40-5-67.1 (b) (2), and the proper working of the Intoxilyzer 5000 machine would have been appropriately raised by a motion in limine, which was not done here. See, e.g., *Pierce v. State*, 173 Ga. App. 551, 552 (2) (327 SE2d 531) (1985).

The transcript of the hearing on the motion to suppress is contained in the record here only as an exhibit to Goddard's motion for reconsideration of the denial of his motion to suppress. Since, however, Goddard requested that nothing be omitted from the record on appeal, we consider this exhibit, along with the trial transcript, in addressing the issue of the pretrial motion.

The hearing transcript indicates that the court, despite Goddard's failure to include the issue in the written motion as required, considered the issue of the legality of the initial contact with Goddard and his arrest. Asked at the hearing by the court if anything other than probable cause were the issue, Goddard's counsel responded negatively.

Thereafter, however, in his motion for reconsideration, Goddard argued that his arrest was illegal because it was made without a warrant while he was in his home, based on *Carranza v. State*, 266 Ga. 263 (467 SE2d 315) (1996). Attached to that motion was the affidavit of Goddard in which he stated that more than one officer barged into his house without permission when he responded to a knock at the door. This motion was also denied by the court.

> When reviewing a trial court's ruling on a motion to suppress, evidence is construed by this Court most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous. *Morgan v. State*, 195 Ga. App. 732, 734-735 (3) (394 SE2d 639) [(1990)].

*Smith v. State*, 237 Ga. App. 616, 618 (2) (516 SE2d 319) (1999).

So viewed, the evidence was that, on Saturday, June 27, 1998, at 8:45 p.m., Corporal Stephens was dispatched pursuant to a 911 call to investigate a reported collision between a car and fixed object. The collision was reported to have occurred within two blocks of the City of Decatur police station, and Corporal Stephens arrived at the

address on West Ponce de Leon Avenue at the corner of Adair Drive within one minute of being dispatched. The driveway for this address exited on Adair Street. The dispatch indicated that a white Chrysler LeBaron, driven by a white male, had struck a post. Upon arriving, Stephens observed a concrete post, approximately three feet tall, which had been knocked over approximately twenty-five feet from the driveway. The post, which marked buried cables for BellSouth, was located in the grass strip between the sidewalk and the street. There were fresh tire marks in the grass around the post.

Stephens saw a white Chrysler LeBaron sitting in the driveway and examined it. There was damage to the right rear bumper of the car, and the front passenger side mirror was hanging off. Stephens touched the hood of the car and found it still warm. At that point, Stephens knocked on the door of the house, and Goddard responded. Stephens did not enter the house but explained that she was investigating an accident and asked if the damage to the car was recent or old. Goddard told her that he had gotten in the car and backed it out of the driveway so his daughter-in-law could leave and then driven the car back into the driveway.

Asked for his license and registration, Goddard told Stephens they were in the car and that the damage to the car had not been there before. Stephens could smell the odor of an alcoholic beverage on Goddard's breath, and his eyes were glassy and bloodshot. Goddard was having trouble walking without stumbling as he walked to the car. Also, he would quit talking in the middle of a sentence and appeared dazed. At one point, Stephens reached out and took Goddard's arm, fearing that he was going to fall. Goddard told her that he had drunk some bourbon and ginger ales while watching a ball game.

Observing that the damage to the car's bumper was consistent with having struck the downed pole,[2] Stephens advised Goddard that he was under arrest for driving under the influence and read him the Georgia Driver's Implied Consent Rights. The first Intoxilyzer test was attempted at 9:00 p.m., although no results were obtained due to insufficient blowing by Goddard. A test was successfully conducted 25 minutes later, and Goddard registered 0.159. On the second completed test, Goddard registered 0.161. We conclude, as apparently did the trial court, that based on the information in the dispatch and her observations at the scene, Corporal Stephens at least had reason to make an inquiry under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). See *Mullis v. State*, 201 Ga. App. 75, 76 (1) (410

---

[2] Goddard was acquitted by the jury of failure to comply with duty upon striking a fixed object. OCGA § 40-6-272.

SE2d 182) (1991); *Hall v. State*, 200 Ga. App. 585 (1) (409 SE2d 221) (1991). Knocking on the outer door of the residence for the purpose of investigating a reported crime is not violative of the Fourth Amendment. *Gilreath v. State*, 247 Ga. 814, 819 (1) (279 SE2d 650) (1981); *Pickens v. State*, 225 Ga. App. 792, 793 (1) (484 SE2d 731) (1997). Once Goddard stated that he had driven the car and she observed numerous signs indicating intoxication, Stephens had probable cause to arrest Goddard for DUI. Since Stephens did not enter his home and Goddard had exited it before he was placed under arrest, *Carranza*, supra, is not implicated.[3] Compare *State v. Sims*, 240 Ga. App. 391, 394 (523 SE2d 619) (1999) and *Threatt v. State*, 240 Ga. App. 592, 595 (1) (524 SE2d 276) (1999) with *Mullis*, supra, and *Hall*, supra.

Therefore, there was no error in denying Goddard's motion.

2. The third and fourth enumerations are that the trial court erred in denying Goddard's motion for directed verdict on Counts 1 and 2, while the fifth enumeration challenges the legal sufficiency of the evidence.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (Citation and punctuation omitted.) *Wright v. State*, 228 Ga. App. 779 (1) (492 SE2d 680) (1997).

*Simmons v. State*, 236 Ga. App. 83, 84 (510 SE2d 925) (1999).

The evidence presented, as set out above, was sufficient for the jury to conclude, based on the circumstances, that within three hours of being approached by the officer, Goddard had driven the car with a blood alcohol concentration of 0.159 or had driven the car while it was less safe for him to drive. *Copeland v. State*, 235 Ga. App. 682, 684 (1) (510 SE2d 124) (1998); *Mullis*, supra; *Hall*, supra.

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

---

[3] Resolution of the factual discrepancies in Goddard's affidavit and the officer's testimony was for the trial court and will not be disturbed by this Court absent clear error, not present here. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

DECIDED JUNE 13, 2000 —
RECONSIDERATION DENIED JUNE 30, 2000.

*William V. Hall, Jr.,* for appellant.
*Gwendolyn R. Keyes, Solicitor, Maura F. Krause, Matthew J. Buzzelli, Thomas E. Csider, Assistant Solicitors,* for appellee.