A04A1632. CURRY v. THE STATE.
A04A1633. CURRY v. STATE OF GEORGIA.
(610 SE2d 635)

BARNES, Judge.

In Case No. A04A1632, Macardo Kunta Curry appeals his criminal convictions and in Case No. A04A1633 he appeals the forfeiture of his property. At the request of the parties, who agree that the core issue in both appeals is whether Curry's constitutional rights were violated by the nonconsensual, warrantless search of Curry's home, we have consolidated the appeals for disposition.

The records on appeal show that following a bench trial on stipulated facts, Curry was convicted of violating the Georgia Controlled Substances Act, trafficking in cocaine, and possessing and using drug-related objects based on contraband seized during a warrantless search of his home. As a result of the same proceeding the trial court also ordered the forfeiture as contraband of Curry's 1971 Chevrolet Monte Carlo, 1998 Dodge Ram truck, twenty-one DVD movies, two televisions, a CD player, a speaker system, an 8mm camera, an AM/FM CD stereo, a VCR, a DVD player, five remote controls, and $48,800 in United States currency.

The sole issue on appeal is whether the trial court erred by denying Curry's motion to suppress evidence seized as a result of the warrantless entry into his home. As we find that the trial court erred by denying Curry's motion to suppress regarding the items seized in the warrantless search of his home, we must reverse Curry's conviction of those offenses as well as the forfeiture of the items seized as a result of the search.

Curry pled guilty to Counts 1 through 5 of the indictment, failure to obey a traffic control device, possession of marijuana and possession of marijuana with intent to distribute, possession of a firearm during the commission of a crime, and possession of and use of drug-related objects found during the search of the car in which he was riding. He does not contest those convictions on appeal.

According to the stipulated facts, after a deputy sheriff stopped Curry for running a red light, the deputy saw a marijuana cigarette

on the car's center console. At the time, Curry was speaking to someone on his cell phone. Although the deputy ordered Curry to end the call and exit the vehicle two or three times, almost a minute passed before Curry finally ended the call. When Curry got out of the car, the deputy saw a pistol on the front seat. A radio check revealed that the pistol had been stolen in another county and the deputy took Curry into custody.

Another deputy searched the car and found a bag containing four packages of marijuana under the passenger's seat and a set of scales in the car. Cumulatively, the marijuana weighed 74.8 grams.

After the deputy related this information to an investigator, the investigator and the deputy went to Curry's apartment, which was located within a half mile of the traffic stop, to "secure Curry's apartment and make sure no one else was present." The investigator entered the apartment and found no one was in the apartment. While there, the investigator saw marijuana on the kitchen counter. Leaving the deputy at the apartment, the investigator then left to obtain a search warrant.

When the warrant was executed, the deputies found various items of contraband, including 66.7 grams of cocaine. They also searched a red Dodge pickup truck that was in the parking lot, from which they seized a marijuana stem.

The stipulation was augmented with the testimony of the deputy who stopped Curry for running the red light and the investigator who entered Curry's apartment. In addition to the matters stated in the stipulation of facts, the investigator testified that, based upon his experience and the way the marijuana was packaged, he was concerned that additional contraband might be at Curry's residence. Because of his experience in other cases, he was also concerned that Curry might be calling someone at the residence to destroy the evidence. The investigator, however, did not know to whom Curry was speaking, the subject of the conversation, or whether anyone was at Curry's residence.

Consequently, the two deputies went to the residence to see if anyone was there. After the investigator knocked and no one answered the door, and even though he did not hear or see anyone in the apartment, which had no back door, the investigator opened the front door with a key obtained from Curry. The deputy did not enter the apartment, but the investigator did and went through every room to make sure no one was there. He did not open any drawers or containers, or, in his opinion, do anything that would constitute a search, but the investigator saw some marijuana on the kitchen counter. The investigator then left the deputy to guard the apartment while he obtained a search warrant.

The affidavit used by the investigator to obtain the search warrant included the information about the traffic stop, the fact that Curry had been arrested one month earlier for possession of marijuana with intent to distribute, and the fact that the investigator had entered the apartment and found the marijuana. When the investigator returned with the warrant, he searched Curry's apartment and found marijuana on the kitchen counter, more marijuana in a kitchen drawer, 64.2 grams of cocaine in a bedroom safe, 5.7 grams of cocaine in a box in the kitchen cabinet, as well as, scales, gloves, and baggies. The deputies also found a total of $48,800 in various stacks in the apartment.

On cross-examination, the investigator acknowledged that he had entered a private home without the resident's consent and without a warrant, and that he saw the marijuana while looking for anyone in the home. The investigator also testified that, while he believed he had sufficient probable cause to obtain a warrant, he wanted first to secure the apartment and then obtain the warrant.

1. When this court reviews a trial court's decision on a motion to suppress, our responsibility is to ensure that there was a substantial basis for the decision. *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990). Further, we are guided by three principles when interpreting the trial court's determination of the facts.

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it.

> Second, the trial court's decision with regard to the questions of fact and *credibility* must be accepted unless clearly erroneous.

> Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations and punctuation omitted; emphasis in original.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). Additionally,

> [w]hile the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the

credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citations and punctuation omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

2. In reviewing the trial court's decision in this case, however, we must be guided by the principle that absent exigent circumstances or consent, an entry into a private home to conduct a search or to effect an arrest is unreasonable without a warrant. *Steagald v. United States*, 451 U. S. 204, 205 (101 SC 1642, 68 LE2d 38) (1981); *Payton v. New York*, 445 U. S. 573, 586 (100 SC 1371, 63 LE2d 639) (1980); *Thompson v. State*, 248 Ga. 343 (1) (285 SE2d 685) (1981). The " 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' . . . *Welsh v. Wisconsin*, 466 U. S. 740, 748 [(I) (C)] (104 SC 2091, 80 LE2d 732) (1984)." *Threatt v. State*, 240 Ga. App. 592, 595 (1) (524 SE2d 276) (1999). Therefore, before the law enforcement authorities may legally enter a private home without a warrant, they must show that exigent circumstances existed to overcome the presumption of unreasonableness that arises from all warrantless home entries. *Welchel v. State*, 255 Ga. App. 556, 558-559 (565 SE2d 870) (2002).

Although Curry contends the warrantless search of his apartment was illegal because it was done without exigent circumstances, the State asserts that his possession of the drugs, the weapon, and drug-related items in his car, along with the investigator's previous experience with suspects using their cell phones to arrange for contraband to be destroyed, created an urgent need that justified the warrantless search.

Under our law, these facts are not sufficient to create exigent circumstances.

An exigent circumstance which does justify the warrantless entry of a private home is the officer's reasonable belief that such action is a necessary response on his part to an emergency situation. . . . Significantly, the presence of contraband without more does not give rise to exigent circumstances. Thus, evidence showing the *imminent destruction* of the contraband is our focus in determining this case.

(Citation and punctuation omitted; emphasis in original.) *Welchel v. State*, supra, 255 Ga. App. at 559.

In this case, whether the deputy and investigator had a reasonable belief that Curry might have called someone so that any contraband in the apartment might be destroyed, the existing facts are not

sufficient to support a reasonable belief that a warrantless entry into the apartment was required to prevent anyone from destroying the contraband. The State points to no evidence showing that necessity, and points to no evidence showing why simply securing the apartment until a search warrant could be obtained was not sufficient. Accordingly, we find that the trial court erred by denying Curry's motion to suppress.

Although the investigator believed it was possible that Curry was calling someone who might destroy the contraband, our law requires more than mere suspicion or possibility. See *Brown v. State*, 269 Ga. 830, 831 (2) (504 SE2d 443) (1998). Thus, just as a "suspicion or 'strong reason to suspect' is an insufficient foundation for a finding of probable cause," (citation and punctuation omitted) *State v. King*, 191 Ga. App. 706, 708 (382 SE2d 613) (1989), a mere possibility is not a sufficient reason on which to base a warrantless, nonconsensual entry into a private home.

Further, as the " 'presence of contraband without more does not give rise to exigent circumstances,' [cit.]" *Davis v. State*, 262 Ga. 578, 582 (3) (422 SE2d 546) (1992), *"the possibility that the drugs might be destroyed does not excuse the deputy's warrantless entry. [Cit.]"* (Punctuation omitted; emphasis in original.) *Welchel v. State*, supra, 255 Ga. App. at 559. Thus, even the investigator's correct belief that additional contraband would be found in Curry's home did not authorize his entry into the apartment.

> The purpose of the warrant requirement in the Fourth Amendment is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search. The placement of this checkpoint between the Government and the citizen implicitly acknowledges that an officer engaged in the often competitive enterprise of ferreting out crime, may lack sufficient objectivity to weigh correctly the strength of the evidence supporting the contemplated action against the individual's interests in protecting his own liberty and the privacy of his home.

(Citation and punctuation omitted.) *Carranza v. State*, 266 Ga. 263, 265 (1) (467 SE2d 315) (1996). Further, "[i]t is elementary that probable cause, however well founded, can provide no justification for a warrantless intrusion of a person's home absent a showing 'that the exigencies of the situation made that course imperative.' [Cits.]" *Clare v. State*, 135 Ga. App. 281, 284 (2) (217 SE2d 638) (1975).

Accordingly, the trial court erred by denying Curry's motion to suppress the evidence found after the warrantless search of his home, and his convictions for violation of the Georgia Controlled Substances

Act, trafficking in cocaine, and possession and use of drug-related objects based on contraband seized during the warrantless search of his home, alleged in Counts 6, 7, and 8 of the indictment, must be reversed. In the same manner, the forfeiture of Curry's property located after the illegal search of his apartment must also be reversed. The forfeiture of the Chevrolet Monte Carlo that Curry was driving at the time he was stopped by the deputies, however, is affirmed because its seizure was not connected to the unlawful search of his home.

*Judgment reversed in Case No. A04A1632 on Counts 6, 7 and 8. Judgment affirmed in part and reversed in part in Case No. A04A1633. Blackburn, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 17, 2005.

*Daniel B. Kane*, for appellant.

*David McDade, District Attorney, Jeffrey L. Ballew, Christopher R. Johnson, Assistant District Attorneys*, for appellee.