A06A2476, A06A2477. THE STATE v. EALUM (two cases).
(643 SE2d 262)

BERNES, Judge.

The State of Georgia appeals the trial court's grant of a motion to suppress in favor of defendants Susie Kalyn Ealum and Linda Jo Ealum. Because there was no exigency justifying the warrantless entry into the defendants' residence, we affirm.

Defendants moved to suppress all tangible physical evidence, statements, and testimony resulting from law enforcement's alleged unconstitutional entry into the trailer they occupied. "Because a motion to suppress under OCGA § 17-5-30 contemplates the suppression only of tangible physical evidence, defendant[s] in effect proceeded under both a motion to suppress and a motion in limine." (Citations omitted.) *Hamrick v. State*, 198 Ga. App. 124 (1) (401 SE2d 25) (1990). On appeal from the grant of a motion to suppress or motion in limine,

> this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.

(Citations omitted.) *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990). See *Tanner v. State*, 243 Ga. App. 640, 641 (1) (533 SE2d 794) (2000).

---

[15] See *Greene v. State*, 257 Ga. App. 837, 839 (2) (572 SE2d 382) (2002).

So viewed, the evidence presented at the suppression hearing reflects the following. During the late night hours of October 31, 2004, three law enforcement officers with the Lee County Sheriff's Department were at a gas station located on Highway 19 in Lee County. While at the station, the officers observed several people standing outside a trailer across the highway who were screaming and laughing. The officers decided to go over to the trailer and ask the individuals to quiet down in order to head off any noise disturbance complaint from the neighbors. Consequently, the officers got into their patrol vehicles and went over to the trailer.

When the officers arrived at the trailer, the individuals who had been standing outside all ran into the residence. Two of the officers proceeded up to the front door of the trailer. The renter of the trailer, defendant Linda Jo Ealum, came out onto the front steps to speak with the officers. The front door to the trailer remained open as she talked with them.

From the vantage point where the officers were talking with Linda Jo, they could see inside the trailer through the front door. The officers claimed that they could smell alcohol emanating from the trailer, although they could not see any bottles or cans of alcoholic beverages. One of the officers later testified at the suppression hearing that he also saw a large group of "young people" in the house, several of whom appeared to be under 21 years of age and in various states of intoxication. None of the young people, however, appeared to be under 18 years of age. Based on these observations, the officer concluded that "it was obvious . . . that there was an underage drinking party that was going on at the house." Without obtaining a warrant, the officers then entered the residence through the open front door.

As the officers entered the trailer, one of them said, "Okay, you're all under arrest." Approximately 15 people were found and detained in the trailer. Everyone was ordered to present their driver's licenses for inspection. The officers also performed alco-sensor tests, and those individuals who tested positive for alcohol and who were underage were formally arrested and taken to jail.

As these events transpired, defendant Susie Kalyn Ealum, who was Linda Jo's sister, came out onto the front porch and began arguing with one of the officers. According to the officers, she was "obviously underage" and smelled of alcohol, and so she was handcuffed and charged with possession of an alcoholic beverage by an underage person. Susie began struggling with the officers but was eventually placed in a patrol car.

At the same time, Linda Jo was screaming at the officers and would not get out of their way. After she demanded to speak with someone in charge, one of the officers escorted her across the yard to

speak with the supervising officer at his patrol vehicle. While speaking with the officer, Linda Jo admitted that there were underage people inside the trailer who had been drinking but asked the officer to "look the other way." The officer refused. Ultimately, Linda Jo was formally arrested and charged with furnishing alcohol to a minor, maintaining a disorderly house, and obstruction of an officer.

Defendants moved to suppress all tangible evidence, statements, and testimony relating to the alleged unlawful entry into the trailer and their arrest.[1] Following a suppression hearing in which the only witnesses were two of the officers involved in the incident, the trial court ruled that while it was "procedurally proper" for the officers to approach the trailer and ask the individuals there to "keep it down," their entry into the trailer was unconstitutional, since the officers lacked probable cause to enter the trailer, no consent was given for the entry, and no exigent circumstances existed. Based on the unconstitutional entry into the trailer, the trial court entered an order granting the defendants' motion. The state now appeals from that order.

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." See also Ga. Const. of 1983, Art. I, Sec. I, Par. XIII. "[A]n unconsented police entry into the home constitutes a search within the meaning of the Fourth Amendment." (Citation, footnote and emphasis omitted.) *Pledger v. State*, 257 Ga. App. 794, 797 (572 SE2d 348) (2002). The state bears the burden of proving the lawfulness of such a search. OCGA § 17-5-30 (b).

Here, the trial court questioned whether the officers had probable cause to enter into the trailer, expressing doubt as to whether the officers could have smelled the odor of alcohol from where they were standing outside the trailer, and noting that the officers never saw any underage persons holding alcoholic beverages. However, even if the officers had probable cause for the entry,[2] "warrantless intrusion of a person's home is prohibited by the Fourth Amendment, absent consent or a showing of exigent circumstances." *Carranza v. State*, 266 Ga. 263, 264-265 (1) (467 SE2d 315) (1996), citing *Steagald v.*

---

[1] It is unclear from the record whether Susie lived at the trailer rented by her sister and thus had standing to challenge the search thereof. See, e.g., *State v. Mack*, 207 Ga. App. 287 (427 SE2d 615) (1993). But, the state did not raise the standing issue in the court below or on appeal, and so we will not address it. *State v. Flores*, 262 Ga. App. 389, 390, n. 1 (585 SE2d 714) (2003).

[2] It is clear that even if they lacked probable cause ultimately to enter the trailer, the officers were legally entitled initially to approach the trailer and speak with Linda Jo on the front steps, since the officers were "merely taking the same route as would any guest or other caller." (Citation and punctuation omitted.) *Strozier v. State*, 244 Ga. App. 514, 515 (535 SE2d 847) (2000). See also *Jenkins v. State*, 223 Ga. App. 486, 487 (1) (477 SE2d 910) (1996).

*United States*, 451 U. S. 204, 211 (III) (101 SC 1642, 68 LE2d 38) (1981).[3] Of the two officers who testified in the present case, one of them stated that he was unaware of whether consent was obtained prior to entry into the trailer, and the other officer explicitly stated that no consent was ever obtained. As such, the state was required to prove that exigent circumstances existed in order to justify the warrantless entry into the trailer. This, the state has failed to do.

Exigent circumstances include emergency situations where "the warrantless entry [is] justified to protect or preserve life or to avert serious injury." (Citations omitted.) *Welchel v. State*, 255 Ga. App. 556, 559 (565 SE2d 870) (2002). But, in the present case, there was no testimony from the officers reflecting that the entry was necessary to protect against the injury or death of any of the occupants. In fact, one of the officers explicitly testified that there was "no reason to believe that anybody was in danger."[4]

Another common example of an exigent circumstance is where contraband is in imminent danger of destruction if entry into the residence is not immediately effectuated. See *Curry v. State*, 271 Ga. App. 672, 675 (2) (610 SE2d 635) (2005); *Welchel*, 255 Ga. App. at 559. Again, however, no evidence was presented at the suppression hearing of an imminent danger of contraband being destroyed. The officers never saw any bottles, cans, or cups containing alcoholic beverages in or outside the trailer. And, unlike a controlled substance, containers and cups containing alcohol are not "a type of evidence that can be readily destroyed, as, for example, by flushing them down a drain or burning them." *Pennsylvania v. Roland*, 637 A2d 269, 272 (Pa. 1994). See also *State v. Davis*, 726 NE2d 1092, 1096-1097 (Ohio Ct. App. 1999). Furthermore, unlike DUI offenses, the alcohol-related crimes of which the defendants were charged — possession of an alcoholic beverage by an underage person (OCGA § 3-3-23 (a) (2)) and furnishing alcohol to a minor (OCGA § 3-3-23 (a) (1)) — do not require the state to prove that the defendants had a certain alcohol level in order to convict them. Thus, there was no risk

---

[3] Citing to *Goddard v. State*, 244 Ga. App. 730, 733 (1) (536 SE2d 160) (2000), the state argues that the rule set out in *Carranza* does not apply in this case because the defendants were arrested outside the trailer. We disagree. In *Goddard*, unlike in the present case, law enforcement officers never entered the defendant's home prior to arresting the defendant outside his home. See id. And, as explained infra, the defendants' arrests in the instant action were tainted by the officers' unlawful entry into the residence. Thus, *Goddard* is inapposite under the factual circumstances here.

[4] Of course, nothing in this opinion forecloses a finding of exigent circumstances in a future case where there is evidence that one or more underage partygoers are passed out from intoxication, are suffering from alcohol poisoning, or are attempting to leave the party in their vehicles while intoxicated, among other things. We also note that protecting the safety of a child can serve as an exigent circumstance, see *Coker v. State*, 164 Ga. App. 493, 496-497 (5) (297 SE2d 68) (1982), but the officers here did not observe anyone in the trailer under 18 years of age.

of valuable evidence being destroyed through "dissipat[ion]" within the time necessary for obtaining a warrant. Compare *State v. Fleming*, 202 Ga. App. 774, 775-776 (1) (415 SE2d 513) (1992).

For these combined reasons, the state failed to carry its burden of establishing that exigent circumstances existed to support the warrantless entry into the trailer.[5] The facts of record "present no compelling reason to justify the failure of law enforcement officers to place the matter before a detached and neutral judicial officer." *Carranza*, 266 Ga. at 266 (1). The trial court therefore committed no error in granting the defendants' motion to suppress.

Nevertheless, the state argues that even if the entry into the trailer was unlawful, the observations of the law enforcement officers made *outside the trailer* subsequent to the entry should not be excluded as fruit of the poisonous tree. Under the fruit of the poisonous tree doctrine, "testimony as to matters observed during an unlawful invasion" may be excluded from evidence, in addition to "the more common tangible fruits of the unwarranted intrusion." (Citations and footnote omitted.) *Wong Sun v. United States*, 371 U. S. 471, 485 (II) (83 SC 407, 9 LE2d 441) (1963). In determining whether such observations in a given case were tainted by the unlawful entry, we can consider the temporal proximity between the unlawful entry and the officers' observations; whether there were any intervening circumstances between the two; and the purpose and flagrancy of the officers' misconduct. See generally *Baker v. State*, 277 Ga. App. 520, 523-524 (2) (627 SE2d 145) (2006). The operative question is whether the officers' observations were "come at by exploitation of [the prior] illegality or instead by means sufficiently distinguishable to be purged of the primary taint." (Footnote omitted.) Id. at 523 (2). The burden of showing that the taint has been purged rests with the state. *Jefferson v. State*, 217 Ga. App. 747, 752 (1) (b) (459 SE2d 173) (1995).

With respect to Susie Ealum, the state argues that because the officers observed that she was underage and intoxicated after she stepped out of the trailer onto the front porch rather than while she was in the trailer, the officers' observations leading to her arrest were untainted by the unlawful entry and should not be excluded. However, construed in favor of the trial court's ruling, the record reflects that Susie stepped out onto the porch of the trailer to speak with the officers *in response to the unlawful entry* and only after the officers

---

[5] Several other jurisdictions have reached a similar conclusion in cases involving the warrantless entry into a home when officers suspect underage drinking. See *Illinois v. Olson*, 444 NE2d 1147, 1150 (Ill. App. Ct. 1983); *In the Matter of B. R. K.*, 658 NW2d 565, 579-580 (Minn. 2003); *City of Jamestown v. Dardis*, 618 NW2d 495, 499-500 (N.D. 2000); *State v. Scott M.*, 733 NE2d 653, 657 (Ohio Ct. App. 1999); *State v. Davis*, 726 NE2d 1092, 1096-1097 (Ohio Ct. App. 1999); *Pennsylvania v. Roland*, 637 A2d 269, 271-272 (Pa. 1994).

had informed all of the partygoers that they were under arrest. Furthermore, there was no significant lapse of time between the unlawful entry and her going out onto the porch, and no intervening circumstances came between the two. Under these circumstances, it would be unreasonable to infer that Susie's decision to step out onto the front porch and speak with the officers "was sufficiently an act of free will to purge the primary taint of the unlawful invasion." (Footnote omitted.) *Wong Sun*, 371 U. S. at 486 (II). As such, the officers' observations were the product of the unlawful entry into the trailer and were properly excluded by the trial court. Cf. *State v. O'Bryant*, 219 Ga. App. 862, 863 (467 SE2d 342) (1996) (officer may seize incriminating evidence observed in plain view, "so long as he has not violated the defendant's Fourth Amendment rights in the process of establishing his vantage point") (citation and punctuation omitted); *Bobo v. State*, 153 Ga. App. 679, 679-680 (266 SE2d 247) (1980) (officer's testimony as to what he observed, which resulted from his unlawful stop of the defendant's vehicle, should have been excluded).

With respect to Linda Jo Ealum, the state appears to argue that the supervising officer should be permitted to testify about the incriminating statements she made to him, since she made the statements to him while she was outside the trailer. But again, construed in favor of the trial court's ruling, the record reflects that Linda Jo made the statements while the unlawful entry was being conducted and while she (along with all of the other occupants) were being detained by the officers as they effectuated the entry. Moreover, her incriminating statements were made as part of a heated discussion with the supervising officer about the entry, and only after the supervising officer told her that he suspected that an underage drinking party was occurring in her trailer. Nor was Linda Jo *Mirandized* prior to making any of the statements. Given these circumstances, the trial court was entitled to conclude that Linda Jo's incriminating statements were tainted by the primary illegality — the unlawful entry into her trailer — and thus were properly excluded by the trial court. See *Wong Sun*, 371 U. S. at 484-485 (defendant's verbal statements made during illegal home invasion should have been excluded). Cf. *Hill v. State*, 140 Ga. App. 121, 126 (4) (230 SE2d 336) (1976) (defendant's incriminating statements should have been excluded, since "[t]hey were made shortly after an . . . illegal detention during which an unlawful search revealed what appeared to be stolen goods").

Finally, the state contends that following the unlawful entry, the defendants acted belligerently and obstructed the officers in carrying out their duties, and that these alleged criminal acts of obstructing law enforcement officers should purge the taint caused by the initial unlawful entry. It is true that under Georgia law, a defendant's

commission of a new crime in the presence of law enforcement can be sufficient to purge the taint of the prior illegality. See *Faulkner v. State*, 277 Ga. App. 702, 705 (1) (627 SE2d 423) (2006); *State v. Stilley*, 261 Ga. App. 868, 870-871 (584 SE2d 9) (2003). In the present case, however, the state cannot show that the defendants committed a new crime. In order to be guilty of the crime of obstructing a law enforcement officer, the defendant must have knowingly and wilfully obstructed a "law enforcement officer in the *lawful discharge* of his official duties." (Emphasis supplied.) OCGA § 16-10-24 (a). An officer who carries out an unlawful entry into a residence or conducts an unlawful arrest is not lawfully discharging his duties, and a citizen who resists an officer under such circumstances is not guilty of obstruction. See *Collins v. State*, 153 Ga. 95, 99 (8) (111 SE 733) (1922); *Shaw v. State*, 247 Ga. App. 867, 871 (2) (b) (545 SE2d 399) (2001); *Green v. State*, 240 Ga. App. 774, 775 (1) (525 SE2d 154) (1999); *Brown v. State*, 163 Ga. App. 209, 212 (4) (c) (294 SE2d 305) (1982).[6] Given this rule in Georgia, it follows that since the officers in the instant action were not lawfully discharging their duties at the time of the defendants' alleged obstructing behavior, obstruction charges would not properly lie against the defendants. As such, the state has failed to demonstrate that the taint caused by the unlawful entry into the trailer was effectively purged. See *State v. Newton*, 227 Ga. App. 394, 397 (4) (489 SE2d 147) (1997) (physical precedent only).

*Judgment affirmed. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED FEBRUARY 28, 2007.

*Cecilia M. Cooper, District Attorney*, for appellant.
*Joseph D. Weathers*, for appellees.

---

[6] We note that other jurisdictions have adopted a different rule. For example, the United States Court of Appeals for the Eleventh Circuit has held that the common law rule that a citizen had the right to resist an officer, "suited though it may have been to a past era, has no significant role to play in our society where ready access to the courts is available to redress such police misconduct." (Citation and punctuation omitted.) *United States v. Bailey*, 691 F2d 1009, 1018 (II) (11th Cir. 1982). We note that in Georgia, the common law rule has been codified in OCGA § 16-10-24 (a), and, consequently, must be abrogated, if at all, by the General Assembly.