In the Supreme Court of Georgia

Decided:   March 7, 2016

S15A1699. HARRIS v. THE STATE.

HINES, Presiding Justice.

Larry Harris appeals from his convictions and sentences for malice murder

and possession of a firearm during the commission of a felony in connection

with the deaths of Commie Spead and Jerry Lewis Williams.  For the reasons

that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that on

[1] The crimes occurred on June 16, 2008.  On June 25, 2008, a Camden County grand jury indicted Harris for the malice murder of Spead, the felony murder of Spead while in the commission of the crime of aggravated assault, the aggravated assault of Spead, the malice murder of Williams, the felony murder of Williams while in the commission of the crime of aggravated assault, the aggravated assault of Williams, possession of a firearm during the commission of the crime of malice murder, and  possession of a firearm during the commission of the crime of aggravated assault.  Harris was tried before a jury April 12-14, 2011, and found guilty of all charges.  On May 10, 2011, Harris was sentenced to concurrent terms of life in prison without the possibility of parole for the two malice murder counts, and a consecutive term of five years in prison for one count of possession of a firearm during the commission of a felony; the remaining charges either merged with a crime for which a sentence was entered or were vacated by operation of law.  See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993).  Harris filed a motion for new trial on May 17, 2011, which he amended on February 26, 2013, again on February 28, 2013, and finally on October 30, 2013; on January 27, 2015, the motion, as amended, was denied.  Harris moved for an out of time appeal on March 25, 2015, which the trial court granted on May 1, 2015.  Harris filed a notice of appeal on May 29, 2015, the appeal was docketed in this Court for the September 2015 term, and submitted for decision on the briefs.

June 16, 2008 at 7:00 p.m. Shavon Roberts ("Roberts") was riding a bicycle on Vacuna Road in Camden County. He saw a white Cadillac Escalade which looked like the one owned by Spead, his stepfather. Roberts approached the vehicle, opened the driver's door, and discovered Spead in the driver's seat and Williams in the front passenger seat, each dead from a single gunshot wound to the head.

Earlier that evening, at 6:00 p.m., or shortly thereafter, Roy Horne, Jr., saw a black pickup truck with a large University of Georgia "G" emblem on the rear window on the side of Vacuna Road in Camden County, in front of the Escalade. Reba Wright ("Wright") also saw a black pickup truck on Vacuna Road at roughly 6:00 p.m., as it turned around near the Escalade; the truck had "mag wheels" in a "starburst" pattern but Wright did not see the driver. Harris drove a black pickup truck with wheel rims in a "starburst" pattern and a large "G" emblem on the rear window.

Inside the Escalade, the position of the bodies and blood spatters indicated that there was no struggle before death and the victims were shot by someone in the rear passenger-side seat. Two .40 caliber shell casings were inside the Escalade and a "cookie" of cocaine worth $1,000.00 was wrapped in a paper

2

towel in the driver's-side visor; a crack pipe was inside Williams's left pocket. One of Harris's fingerprints was on the exterior of the Escalade's rear passenger-side door.

On June 17, 2008, investigators searched Harris's residence pursuant to a search warrant and seized an empty Glock plastic pistol box for a .40 caliber handgun and three boxes of .40 caliber Hornaday brand ammunition. On January 6, 2009, construction workers discovered a .40 caliber Glock handgun along the southbound lanes of Interstate 75 in Suwannee County, Florida; the pistol was loaded with Hornaday brand ammunition, a variety not as common as the three major brands of handgun ammunition. Harris stipulated that the pistol was his, and ballistic evidence showed that the shell casings recovered from Spead's Escalade came from that handgun. Blood stains were found on the shoes and shorts that Harris was wearing at the time of his arrest, and DNA extracted from them matched Spead's DNA profile.

1. Harris moved to suppress the Glock pistol box and three boxes of ammunition seized from his home while officers were executing the search warrant, and contends that the trial court erred in denying his motion. "'On reviewing a trial court's ruling on a motion to suppress, evidence is construed

3

most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous.' [Cit.]" *Scandrett v. State*, 293 Ga. 602, 603 (2) (748 SE2d 861) (2013).

During the hearing on the motion to suppress, evidence was presented that, the day after the crimes, at the direction of investigators, law enforcement personnel, including Lt. Sears of the Camden County Sheriff's Office, went to Harris's apartment to ascertain if they could contact him; they knew that investigators wished to question him about the murders of Spead and Williams. They saw Harris's pickup truck in the parking lot of the apartment complex and they knocked on the door of his apartment. Harris's roommate, Michael Holly, answered and invited the officers inside. There, for their safety, they conducted a sweep of the apartment to ensure that Harris was not hiding therein. While conducting that sweep, Lt. Sears noticed the residue of illegal drugs and paraphernalia associated with the use of such drugs on the dresser in one of the apartment's two bedrooms; after Lt. Sears saw the drug residue and paraphernalia, Holly said that it was Harris's bedroom in which the items were seen.

The officers did not find Harris during their sweep of the apartment, and Holly voluntarily went with them to a law enforcement facility. Lt. Sears obtained a warrant to search Harris's and Holly's apartment for controlled substances and contraband related to drug crimes. Returning to the apartment, Lt. Sears determined that it had been cleaned since he initially saw the drug residue and paraphernalia, and that the items he had noticed before had been removed. While he was searching for illegal drugs under Harris's bed, Lt. Sears found a black plastic box for a .40 caliber Glock pistol; inside the box was a magazine for the pistol, with ammunition in it. Also found were three boxes of .40 caliber Hornaday brand ammunition; Lt. Sears had been advised by the homicide investigators that, based on the markings on the shell casings found inside Spead's Escalade, Spead and Williams may have been killed with a .40 caliber pistol.

Harris contends that while Lt. Sears and the other law enforcement officers had Holly's permission to enter the apartment, Holly could not give them authority to enter Harris's bedroom as he did not have common authority over that space. See *Tidwell v. State*, 285 Ga. 103, 105-106 (1) (674 SE2d 272) (2009). However, Holly's authority over what was later described as Harris's

bedroom is not the issue. Rather, the officers were lawfully in the apartment, knew that Harris was suspected of involvement in a double homicide and that his pickup truck was parked outside the apartment, and under the facts of this case, were entitled to make a protective sweep of the apartment for their own safety. See *Celestin v. State*, 296 Ga. App. 727, 733-734 (3) (b) (576 SE2d 480) (2009); *Nickerson v. State*, 248 Ga. App. 829, 832 (2) (b) (545 SE2d 587) (2001). Compare *Causey v. State*, 334 Ga. App. 170, 172-175 (2) (778 SE2d 800) (2015). Accordingly, there is no merit to Harris's argument that Lt. Sears was not lawfully in a position to notice the drug residue and paraphernalia, the illegal nature of which was readily apparent to Lt. Sears, as he had spent more than seven years working with a drug task force. See *Cupe v. State*, 327 Ga. App. 642, 646 (1) (760 SE2d 647) (2014).

Nor is there merit to Harris's argument that the Glock pistol box and ammunition should have been suppressed because those items were beyond the scope of the search warrant's specification of illegal drugs and related contraband. See *Smithson v. State*, 275 Ga. App. 591, 597-599 (4) (621 SE2d 783) (2005). Lt. Sears was searching for drugs under the bed, which, based upon his experience with other drug searches, he knew to be a place where

6

illegal drugs were often hidden, and the trial court's finding that the pistol box and ammunition were found inadvertently in plain view while in execution of a valid search warrant is not clearly erroneous. *Scandrett*, supra.

2. At trial, Harris made a chain of custody objection regarding the articles of his clothing upon which was found Spead's DNA, noting in particular that a photograph of Harris at the time of his booking into jail shows him wearing a white T-shirt, but that the evidence bags containing his clothing did not include such a shirt, but included a tank-top shirt. During trial, the State presented testimony that explained the discrepancy between the photograph and the items in the evidence bag, to wit: when Harris was arrested, he arrived wearing a white T-shirt over a tank-top shirt, as well as dark-shorts; at the time, the jail's booking practice permitted a prisoner who arrived with a white T-shirt to retain the shirt to wear under his jail-issued jumpsuit; when Harris changed his clothing, he put the white T-shirt back on and then put his jumpsuit over it; and Harris's other clothing was collected as part of the standard procedure, and later turned over to a detective.

The trial court did not err in admitting the evidence over Harris's objection.

> When the State seeks to introduce into evidence an item that is subject to the chain of custody rule, it must establish with reasonable assurance that the item seized is the same as the item being offered into evidence. And, the State must show with reasonable certainty that there has been no tampering or substitution of the evidence.

*Walker v. State*, 294 Ga. 851, 852 (2) (757 SE2d 64) (2014) (Citations and punctuation omitted.) This the State did, and the trial court did not abuse its discretion in determining that the State laid the necessary evidentiary foundation. See *Collins v. State*, 290 Ga. 505, 506 (2) (722 SE2d 719) (2012).

3. Harris contends that his trial counsel failed to provide effective representation in that counsel did not request a jury instruction on "mere presence." In order to prevail on this claim, he must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in

8

the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. "'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

At trial, Harris was represented by two attorneys. During the hearing on the motion for new trial, appellate counsel asked one of Harris's trial attorneys why there had not been a request for an instruction on "mere presence," see *Morales v. State*, 281 Ga. App. 18, 19 (1) (635 SE2d 325) (2006), and this trial counsel responded that he did not know; when the second trial attorney testified during the hearing, appellate counsel did not ask any questions about the failure to request the instruction. Pretermitting whether Harris has met his burden to show that the performance of his trial counsel was deficient, this Court has stated that a jury instruction on "mere presence" is simply a corollary to the

requirement that the State prove beyond a reasonable doubt each element of the crimes charged, and where, as here, the trial court's instructions clearly informed the jury of this requirement, there is no error in failing to give the "mere presence" instruction. *Simmons v. State*, 282 Ga. 183, 188 (14) (646 SE2d 55) (2011). See also *Parker v. State*, 270 Ga. 256, 258 (3) (507 SE2d 744) (1998), overruled on other grounds, *Linson v. State*, 287 Ga. 881, 886 (4) (700 SE2d 394) (2014). Accordingly, the trial court did not err in finding that the failure to request such an instruction did not prejudice Harris. *Robinson*, supra.

4. Finally, citing circumstantial evidence such as the presence of his fingerprint on the right rear passenger-side door when the fatal shots were fired from the right rear passenger seat, ballistics evidence showing that the cartridge cases that were recovered from the interior of the Escalade were ejected from his pistol, the presence of Spead's DNA on his clothing, and evidence that a pickup truck matching the description of his was next to the Escalade near the time of the shooting, Harris contends that the evidence was insufficient to authorize the jury to find beyond a reasonable doubt that he was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61

LE2d 560) (1979). Although Harris urges that the evidence did not necessarily prove that he killed Spead and Williams, "[w]hen this Court reviews the sufficiency of the evidence, it does not re-weigh the evidence or resolve conflicts in witness testimony, but instead it defers to the jury's assessment of the weight and credibility of the evidence. [Cit.]" *Greeson v. State*, 287 Ga. 764, 765 (700 SE2d 344) (2010). The jury was instructed on the use of direct and circumstantial evidence, and the evidence authorized it to find Harris guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson*, supra; *Harper v. State*, 298 Ga. 158, 161 (780 SE2d 308) (2015).

Judgments affirmed. All the Justices concur.