306 Ga. 500
FINAL COPY

S19A0985.  MOORE v. THE STATE.
S19A0986.  JONES v. THE STATE.

BLACKWELL, Justice.

William Franklin Moore, Jr., and Todd Eric Jones, Jr., were tried by a Spalding County jury and convicted of murder, armed robbery, aggravated assault, and the unlawful possession of a weapon during the commission of a crime, all in connection with the fatal stabbing and beating of Kevin Harmon. Moore and Jones appeal, contending that the State failed to present evidence legally sufficient to sustain their convictions. In addition, Moore argues that he was improperly sentenced, and Jones claims that the trial court improperly admitted two knives into evidence. Upon our review of the record and briefs, we find no merit in these claims of error, and we affirm.[1]

---

[1] A Spalding County grand jury indicted Moore, Jones, and Justin Cody Tuggle in February 2012, charging them with murder with malice aforethought, murder in the commission of an aggravated battery, armed

1. Viewed in the light most favorable to the verdicts, the record shows that Spalding County Sheriff's deputies were dispatched to the home of Monica Martin on the afternoon of February 14, 2011 in response to a reported robbery and assault.[2] Upon their arrival, they found Moore bleeding considerably from stab wounds. Jones and Justin Cody Tuggle were also at the house; the men described the alleged robbery and assault, and Jones told the officers where the

robbery, aggravated battery, two counts of aggravated assault, and the unlawful possession of a knife during the commission of a crime. Tuggle was tried alone in October 2012, he was found guilty on all counts, and his convictions were affirmed in Tuggle v. State, 305 Ga. 624 (825 SE2d 221) (2019). Moore and Jones initially were tried and found guilty on all counts in February 2013, but the trial court granted their motions for new trial in July 2017. Moore and Jones were tried again in October 2017, and they again were found guilty on all counts. The trial court sentenced them to imprisonment for life without the possibility of parole for malice murder, a consecutive term of imprisonment for life for armed robbery, a consecutive term of imprisonment for twenty years for aggravated assault (with a knife), and a consecutive term of imprisonment for five years for the unlawful possession of a weapon during the commission of a crime. The felony murder was vacated by operation of law, and the trial court merged the aggravated battery and aggravated assault (with a bat) with the murder. Moore and Jones both filed timely motions for new trial in October 2017, they amended their motions in January 2019, and the trial court denied both motions in March 2019. Moore and Jones both filed timely notices of appeal, and their appeals were docketed in this Court for the April 2019 term and submitted for decision on the briefs.

[2] Moore was living in Martin's home and described her as his "baby mama."

purported crimes had occurred. When officers went to that location, however, they found no blood or other evidence that would corroborate the men's story.

In fact, the investigation soon revealed that Jones, Moore, and Tuggle were the perpetrators, not the victims, of a robbery gone awry. First, officers obtained surveillance video from a Griffin gas station. The recording showed that, around 1:40 a.m. on February 14, Tuggle and Jones were inside the gas station when Harmon entered the station and withdrew $100 from an ATM. Tuggle briefly spoke with Harmon in the gas station parking lot, and Harmon apparently agreed to leave the gas station in a Pontiac Sunfire that was driven by Tuggle and owned by Jones's mother.

Tuggle drove Harmon, Jones, and Moore to the home of one of Moore's friends, perhaps to purchase methamphetamine. The home was located in the Runaway Lakes subdivision (which is just outside Griffin but still in Spalding County). Moore asked his friend about robbing Harmon on the friend's property. When Moore's friend refused to allow the robbery, Tuggle drove Harmon, Jones, and

3

Moore to a vacant lot within the same subdivision.

One of Jones's friends reported that Jones texted and called her on the morning of February 14. Jones told her that "they had [attempted] to rob somebody and it had [gone] wrong" and that "they had killed someone." He admitted that he had hit the unnamed victim in the head "one time" with a baseball bat. He also asked the friend if she would bring him a new pair of shoes because the shoes he was wearing had blood on them.

On the afternoon of February 14, law enforcement discovered Harmon's body in the vacant lot of the Runaway Lakes subdivision. A bloody knife was discovered nearby, and while some money was found in Harmon's pocket, it was less than the $100 he had withdrawn from the ATM. Harmon had sustained 58 injuries in all, and the medical examiner concluded that the cause of death was multiple blunt and sharp force injuries.

Finally, police officers conducted a search of Martin's home. They discovered a bloody knife behind the refrigerator, and they found the jacket that Jones had been wearing on February 14 hidden

under a mattress and stained with blood.[3] In the woods just outside the home, officers discovered a bloody aluminum baseball bat. Blood samples were taken from the Pontiac, Jones's jacket, and the baseball bat, and those samples (as well as the knife found near Harmon's body and the knife discovered behind the refrigerator) were tested at the GBI Crime Lab. Moore's DNA was identified inside the Pontiac, on the baseball bat, and on both knives, and Harmon's DNA was identified on the Pontiac, on the baseball bat, and on Jones's jacket.

Moore and Jones both claim that the evidence presented at trial is insufficient to sustain their convictions. But "[i]t is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." Willis v. State, 304 Ga. 781, 783-784 (1) (822 SE2d 203) (2018) (citation and punctuation omitted). And despite Moore's

---

[3] Another knife was obtained from a juvenile at Martin's home, but it did not appear to have blood on it.

claim that he acted in self-defense, it was for the jury to determine the existence of justification, and it was "free to reject [Moore's] claim that he acted in self-defense." Hoffler v. State, 292 Ga. 537, 539 (1) (739 SE2d 362) (2013). Based on the evidence described herein, the jury was authorized to find Moore and Jones guilty of the crimes for which they were convicted, either directly or as parties to the crime. See Solomon v. State, 304 Ga. 846, 848 (1) (823 SE2d 265) (2019) ("Whether a person was a party to a crime can be inferred from his presence, companionship and conduct before and after the crime was committed." (citation and punctuation omitted)).[4]

---

[4] Jones also alleges that the trial court erred when it denied his motion for a directed verdict and that the verdict is "contrary to the evidence." But "[t]his Court applies the same standard of review to a denied motion for directed verdict as that which is used to determine the sufficiency of the evidence." Thompson v. State, 302 Ga. 533, 536 (II) (807 SE2d 899) (2017). And "[a] motion for new trial based on OCGA § 5-5-20, i.e., that the verdict is contrary to the evidence, addresses itself only to the discretion of the trial judge." Slaton v. State, 296 Ga. 122, 125 (2) (765 SE2d 332) (2014) (citation and punctuation omitted). In addition, Moore and Jones both claim that the evidence is insufficient to sustain their convictions for felony murder. The felony murders, however, were vacated by operation of law, and neither Moore nor Jones actually stands convicted of felony murder, so these claims are moot. See Mills v. State, 287 Ga. 828, 830 (2) (700 SE2d 544) (2010).

2. In Case No. S19A0985, Moore notes that the sentence imposed after his second trial is harsher than the sentence imposed after his first trial,[5] and he argues that his second sentencing violated his right to due process, invoking the presumption of vindictiveness recognized in North Carolina v. Pearce, 395 U.S. 711 (89 SCt 2072, 23 LE2d 656) (1969). But there is no presumption of vindictiveness in this case. Such a presumption does not apply where, as here, the trial court itself granted the motion for new trial. See Adams v. State, 287 Ga. 513, 516 (1) (696 SE2d 676) (2010). Nor does it apply where, as here, a different trial judge conducted the second trial and handed down the second sentence. See id. ("[T]he fact that the case involved two different sentencers was an alternative, independent basis for finding the Pearce presumption inapposite." (citation and punctuation omitted)).

3. Finally, in Case No. S19A0986, Jones claims that the trial

---

[5] As described in footnote 1, supra, Moore (and Jones) were initially tried in 2013. After that trial, they both were sentenced to a term of imprisonment for life without the possibility of parole for malice murder and *concurrent* terms of imprisonment for armed robbery and aggravated assault.

7

court erred when it admitted into evidence the knife found behind Martin's refrigerator and a knife that the deputies "had taken off of a juvenile" while they were in Martin's home. At trial, it was revealed that, at some point between the first trial and second trial, the boxes for these two knives (labeled "2" and "3") were switched. As a result, Jones now contends, it was "impossible" to tell which knife was the one found behind the refrigerator that was tested for DNA. Jones acknowledges that he did not challenge the chain of custody of these knives at trial, so we will review this claim only for plain error. See OCGA § 24-1-103 (d).

> To establish plain error, Appellant must show (1) an error that was not affirmatively waived, (2) that the error was "clear and obvious," and (3) that the error affected his "substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings." If Appellant made such a showing, we would have discretion to remedy the error, but "only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Appellant, however, has failed to make the threshold showing.

Davis v. State, 305 Ga. 640 (2) (827 SE2d 265) (2019) (citations omitted).

Here, the admission of the mislabeled exhibits was not error, much less "clear and obvious" error. The record shows that the knives at issue were "very distinctive," and the witness who tested the knives at the GBI Crime Lab testified that she took photographs of the knives when she first obtained them, and — despite the mislabeling of the boxes that occurred after the first trial — she was able to discern which was the knife that was found behind the refrigerator (which tested positive for Moore's DNA) and which was the knife obtained from the juvenile (which did not appear to have blood on it and was not tested for DNA). The State thereby "establish[ed] with reasonable assurance that the item[s] seized [were] the same as the item[s] being offered into evidence" and "show[ed] with reasonable certainty that there has been no tampering or substitution of the evidence." Harris v. State, 298 Ga. 588, 592 (783 SE2d 632) (2016) (citation and punctuation omitted).[6]

---

[6] Jones also contends that the trial court plainly erred by admitting the knife obtained from a juvenile because "[t]here was no evidence of any kind as to the relevance of that knife to the charges in this case" and that its admission was "probably to [his] detriment." But even if Jones were able to show that this

9

*Judgments affirmed. All the Justices concur.*

DECIDED AUGUST 5, 2019.

---

knife was irrelevant, he has failed to establish that its admission resulted in any prejudice toward him (much less that it affected his "substantial rights").

Murder. Spalding Superior Court. Before Judge Sams.

*Robert C. Rutledge*, for appellant (case no. S19A0985).

*James E. Bischoff*, for appellant (case no. S19A0986).

*Benjamin D. Coker, District Attorney, Marie G. Broder, B. Ashton Fallin, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General*, for appellee.