**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 15, 2024**

# In the Court of Appeals of Georgia

A23A1412. KENNEDY v. THE STATE.

PIPKIN, Judge.

After a four-day trial, a jury found Appellant Demetris Kennedy guilty of three counts of possession of a firearm by a convicted felon, theft by receiving (stolen firearm), three counts of dog fighting, and one count of possession of marijuana with intent to distribute; the trial court merged the three counts of possession of a firearm by a convicted felon for the purposes of sentencing. Following a hearing, the trial court entered a detailed order denying Kennedy's motion for new trial as amended. On appeal, Kennedy argues that the evidence presented at trial was insufficient to sustain his convictions, that the trial court wrongfully denied his motion to suppress,

and that the trial court erred in admitting certain evidence seized as a result of the search at his trial. For the reasons that follow, we affirm.

1. Kennedy first argues that there was insufficient evidence to sustain his convictions for possession of marijuana with intent to distribute or for theft by receiving stolen property. We will address each argument in turn, keeping in mind that,

> [w]hen evaluating the sufficiency of the evidence as a matter of constitutional due process, we must determine whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citation and punctuation omitted.) *Monroe v. State*, 315 Ga. 767, 768 (884 SE2d 906) (2023).

Viewed in this light, the evidence adduced at trial established as follows. In February 2019, a search warrant was executed at Kennedy's residence in LaGrange, Georgia. During an initial sweep of the residence, law enforcement discovered, among other things, two firearms and ammunition in close proximity to tax documents bearing Kennedy's name. Law enforcement would later discover a third firearm, a Kel-Tec rifle, along with body armor. A more in-depth search of the house revealed

334 grams -- nearly three-quarters of a pound -- of marijuana, approximately $3,000 in United States currency, digital scales, and "vacuum-sealed" plastic baggies; the jury learned that the baggies and scales were part of the drug trade. Consistent with this testimony, the jury was shown posts from Kennedy's social media account that depicted him possessing and selling marijuana from the Lagrange residence.

Outside of the residence, law enforcement discovered a number of "pit-bull variety" dogs that were "all tethered or chained in place" in the yard of the residence. An expert testified that using chains to tether dogs is common with "fighting dogs" because it requires the dog to carry "the weight of that chain around on a daily basis . . . thereby strengthening not only its neck . . . but its front legs." The dogs discovered on the property were observed to have marks and injuries consistent with dog fighting.

A search of a shed in the backyard revealed a "treadmill" or a "carpet mill" that, the jury learned, is "commonly used to train fighting-style dogs." Likewise, law enforcement also found a "spring pole" in the shed, which is a "spring that's connected to a small portion of rope, which is then connected to a chew toy." This device trains a dog to "keep its jaws locked so that it does not lose grip on what it has," it teaches the dog "the ability to breathe while biting," and it works to increase

the strength of the dog's hind legs. Also found in the shed were syringes for medication administration and vaseline, which, an expert explained, "is many times used to cover existing injuries to dogs . . . to cover the scabs or wounds to keep them from bleeding, keep the wounds from breaking open." Consistent with this testimony, the jury was presented with evidence of social-media posts and messages involving dog fighting.

Regarding the Kel-Tec rifle found during the search, the jury learned that it had been reported stolen in January 2017. In jailhouse telephone conversations recorded between Kennedy and his then-girlfriend, Kennedy is heard discussing the stolen firearm and describing both where the Kel-Tec had been stashed and the bag in which it had been stored. While Kennedy told his then-girlfriend that a third party had placed the rifle in the crawl space, Kennedy also expressed doubt as to whether the firearm was operable and acknowledges that it is "dirty," a term understood to signify that a firearm is stolen. Finally, the State adduced evidence that Kennedy was, in fact, a convicted felon.

(a) We first turn to Kennedy's argument that the evidence was insufficient to sustain his conviction for possession of marijuana with intent to distribute under

OCGA § 16-13-30 (j). "[T]o support a conviction for this offense, the State must prove more than mere possession or intent for personal use. Instead, the evidence must show an intent to distribute." (Citations and punctuation omitted.) *Patel v. State*, 351 Ga. App. 580, 581 (831 SE2d 513) (2019). Here, the jury learned that law enforcement searching Kennedy's residence discovered almost a pound of marijuana, zip-lock baggies, digital scales, and a large quantity of United States currency; further, the State adduced posts from Kennedy's social media that depicted him possessing and selling marijuana from the Lagrange residence.

Kennedy argues, however, that OCGA § 2-23-3,[1] when read in conjunction with

---

[1] OCGA § 2-23-3 defines certain words and phrases as they are used in the "Georgia Hemp Farming Act," see OCGA § 2-23-1, et seq., including the terms "hemp" and "hemp products."

OCGA § 16-13-21,[2] required the State "to prove beyond a reasonable doubt that the alleged marijuana was in fact marijuana[] and not hemp or a low THC product." This argument fails for two reasons.

First, while Kennedy argues -- without any citation to legal authority -- that he was entitled to rely on the law as it existed "at the time that [he] went to trial," the general principle is much the opposite: "a crime is to be construed and punished according to the provisions of the law existing at the time of its commission."[3] *Bryson v. State*, 350 Ga. App. 206, 207 (2) (828 SE2d 450) (2019). Here, the indicted offenses were alleged to have occurred in February 2019, but the statutes on which Kennedy

---

[2] OCGA § 16-13-21 defines certain words and phrases as they are used in the "Georgia Controlled Substances Act," see OCGA § 16-13-20, et seq., including the term "marijuana." Under that section, the term

'[m]arijuana' means all parts of the plant of the genus Cannabis, whether growing or not, the seeds thereof, the resin extracted from any part of such plant, and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin, but shall not include . . . hemp or hemp products as such terms are defined in Code Section 2-23-3.

OCGA § 16-13-21 (16).

[3] We note that this rule does not necessarily apply to *procedural* statutes. See *State v. Walker*, 342 Ga. App. 733, 734 (805 SE2d 262) (2017).

attempts to rely were not in effect until May 2019, see, e.g., OCGA § 2-23-1; thus, those provisions play no role in our evaluation of the sufficiency of the evidence here. See, e.g., *Dunbar v. State*, 363 Ga. App. 869, 872 n.1 (1) (873 SE2d 247) (2022) (evaluating sufficiency of evidence under the law existing at the time of the alleged offense).

Even if this were not the case, we have recently explained that the Georgia Hemp Farming Act, OCGA § 2-23-1, "does not authorize making hemp available to individual consumers in a form that resembles raw marijuana." *Gowen v. State*, 360 Ga. App. 234, 238 (1) (860 SE2d 828) (2021). Likewise, it is well established that the State is not required to prove the THC level of marijuana. *See Trujillo v. State*, 286 Ga. App. 438, 439 (1) (a) (649 SE2d 573) (2007). See also *C. W. v. Dept. of Human Svcs.*, 353 Ga. App. 360, 362 (836 SE2d 836) (2019) (explaining that "our law distinguishes marijuana from THC"). The evidence was plainly sufficient in this case, and this argument is without merit.

(b) Kennedy also contends that the evidence was insufficient to sustain his conviction for theft by receiving stolen property for unlawfully receiving and retaining the Kel-Tec rifle. With respect to this offense, OCGA § 16-8-7 (a) provides that

[a] person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. "Receiving" means acquiring possession or control or lending on the security of the property.

While "[p]roof of possession of the stolen property is not by itself sufficient to show the accused knew or should have known the property was stolen," *McKinney v. State*, 276 Ga. App. 75, 76 (622 SE2d 427) (2005), "knowledge sufficient to establish guilt may be inferred from possession in conjunction with other evidence of knowledge," *Wells v. State*, 268 Ga. App. 62, 62 (1) (601 SE2d 433) (2004).

Here, the Kel-Tec was found in the residence in which Kennedy was residing, and the jailhouse telephone calls reflect that Kennedy knew where the firearm was hidden, was able to describe the bag in which it was stored, had insight into the functionality of the firearm, and acknowledged that it was stolen. As we have explained before, and like the jury was instructed,

it was not necessary for the State to show how and when [the defendant] came to have possession, so long as there was sufficient evidence that he retained the [item] with guilty knowledge. Retention of stolen property which a person knows or should know is stolen without intent to restore it to the owner will sustain the conviction even where guilty knowledge at the time of the acquisition of the stolen property is not shown. After the fact knowledge will sustain a conviction.

8

(Citation and punctuation omitted.) *Floyd v. State*, 207 Ga. App. 275, 282 (2) (a) (427 SE2d 605) (1993). See also *Reese v. State*, 313 Ga. App. 746 (722 SE2d 441) (2012). Accordingly, the evidence is sufficient with respect to this offense, and this argument is without merit.

2. Prior to his trial, Kennedy moved to suppress the evidence seized during the search of his LaGrange residence. After conducting a hearing, the trial court denied the motion. Kennedy asserts two enumerations of error concerning the trial court's denial of his motion to suppress. We address each in turn.

"On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous." (Citation and punctuation omitted.) *Harris v. State*, 298 Ga. 588, 590 (1) (783 SE2d 632) (2016). "[W]hen reviewing a ruling on a motion to suppress, we may consider testimony submitted both at the hearing on the motion to suppress and at trial." *Reyes v. State*, 334 Ga. App. 552, 552 (1) (780 SE2d 674) (2015). However, "we review questions of law de novo." Id.

(a) During the suppression hearing, the trial court learned that Kennedy was the target of a drug investigation. As part of that investigation, law enforcement visited Kennedy's residence in the early-morning hours "to conduct what's commonly known as a trash pull . . . whereby [law enforcement] would pick up the [trash cans] that were out at the edge of the curb and look for evidence of the crime in the waste." During the "trash pull," law enforcement discovered "vacuum-sealed bags with apparent marijuana residue and/or seeds, and other documentation tying [the trash] to the residence[.]" The information gleaned from the "trash pull" was later used to secure a warrant to search Kennedy's residence.

Kennedy asserts that the "trash pull" was improper because it encroached on his curtilage and, thus, that the fruits of the subsequent search of his house should be suppressed. However, as the State correctly points out, Kennedy did not raise this issue below, and we review this enumeration for plain error only. See *Williams v.*

*State*, 315 Ga. 490, 494-495 n.7 (2) (883 SE2d 733) (2023).[4] To establish plain error, an appellant "must point to a legal error that was not affirmatively waived, was clear and obvious beyond reasonable dispute, affected his substantial rights, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." (Citations and punctuation omitted.) *Castillo-Velasquez v. State*, 305 Ga. 644, 653 (4) (827 SE2d 257) (2019). There is no error here, much less plain error.

Pointing to testimony from the suppression hearing, Kennedy asserts that any search of his trash cans was improper because, he says, the trash cans were within the curtilage of his house, namely that the receptacles were "in the center of the yard" and "by the driveway." This argument, however, simply takes testimony out of context. Indeed, the full sentence from which Kennedy takes his quotes reads as follows: "Upon arrival in the area, there were two trash cans, *both located by the roadway* of the residence going by the driveway, the other in the center of the yard

---

[4] We caution that a number of our recent decisions decided under the new Evidence Code -- which hold that Fourth Amendment challenges made for the first time on appeal are entirely waived from appellate review -- are seemingly at odds with *Williams*. See, e.g., *Cruz v. State*, 366 Ga. App. 183, 186 (2) (881 SE2d 27) (2022); *Huerta-Ramirez v. State*, 357 Ga. App. 123, 131-132 (3) (a) (850 SE2d 218) (2020); *Massey v. State*, 350 Ga. App. 427, 431 (2) (a) (827 SE2d 921) (2019). We need not, at this point, address any possible tension in between these decisions.

*directly by the curb*[.]" (Emphasis supplied.) The officer reiterated this testimony on cross-examination by defense counsel, and the warrant application also reflects that the trash cans were found "at the curb."

While Kennedy asserts that he "placed [his garbage] into physical barriers that restricted access to others and placed those physical barriers on his property," this assertion fails to include a reference to the record, and Kennedy points to no contradictory evidence or testimony concerning the placement of the trash cans. As Kennedy acknowledges in his brief, the Fourth Amendment does not prohibit the warrantless search or seizure of garbage left for collection outside the curtilage of a home. *California v. Greenwood*, 486 U. S. 35, 37 (108 SCt 1625, 100 LE2d 1625) (1988). Accordingly, Kennedy is not entitled to relief on this claim.

(b) The search warrant authorized law enforcement to search for, among other things, "[m]arijuana and all items used in the distribution, sale and possession of [m]arijuana such as scales, baggies, vacuum bags." Kennedy argues that the trial court should have suppressed the seizure of "firearms, body armor, and bullets" because, he said, those items were outside the scope of the search warranted and "the

incriminating character [of these items] were not immediately apparent to law enforcement." We see no error.

As a preliminary matter, while Kennedy complains that the search warrant did not authorize law enforcement to search for or seize the relevant items, the search warrant in question pertained to "the distribution, sale, and possession of [m]arijuana," and both Georgia and Federal appellate courts have recognized that "firearms are tools of the drug trade." *Felix v. State*, 241 Ga. App. 323, 325 (4) (526 SE2d 637) (1999). Indeed, the Eleventh Circuit Court of Appeals has "recognized that firearms can be so connected to the sale of narcotics that their seizure is implicitly authorized by a warrant to search for narcotics." *United States v. Folk*, 754 F3d 905, 910 (C) (1) (11th Cir. 2014).

Nevertheless, even if the seizure of the firearms, ammunition, and body armor is not within the scope of the warrant, we agree with the State that law enforcement was authorized to seize these items under the plain-view doctrine. As the Supreme Court of the United States has explained about the plain-view doctrine,

> [i]t is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must

13

> be satisfied to justify the warrantless seizure. First, not only must the item be in plain view; its incriminating character must also be immediately apparent . . . Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself.

(Citations, punctuation, and footnote omitted.) *Horton v. California*, 496 U. S. 128, 136-137 (II) (110 SCt 2301, 110 LE2d 112). The requirement that "the incriminating nature of the object must be 'immediately apparent'" is understood to mean that "the officer must have probable cause to believe that the item in question is evidence of a crime or is contraband." (Citation omitted.) *George v. State*, 312 Ga. 801, 805 (865 SE2d 127) (2021). As has been explained, probable cause in this context

> is a flexible, common-sense standard. It merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability that incriminating evidence is involved is all that is required.

(Citations and punctuation omitted.) *Texas v. Brown*, 460 U. S. 730, 742 (103 SCt 1535, 75 LE2d 502) (1983) (plurality opinion). Accord *Florida v. Harris*, 568 U. S. 237, 243-244 (II) (133 SCt 1050, 185 LE2d 61) (2013).

First, there is no dispute that law enforcement officers were lawfully located at Kennedy's residence executing a search warrant and, further, that law enforcement discovered and accessed the firearms, ammunition, and body armor while searching locations or containers where "[m]arijuana and . . . items used in the distribution, sale and possession of [m]arijuana" might be found. See *United States v. McManaman*, 673 F3d 841, 848-849 (II) (8th Cir. 2012) (recognizing the well-settled principle that the plain view doctrine applies where officers lawfully search an area or container that is suitable or large enough to contain the object of the search warrant); *United States v. Williams*, 592 F3d 511, 525 (III) (4th Cir. 2010) (plain view doctrine applied to discovery of machine gun and scope located in lockbox where warrant authorized law enforcement to search for "things like disks and 'thumbnail drives' . . . which could very easily have been stored in the lockbox").

Next, there is no dispute that, at the time of the search, Kennedy was a convicted felon and, further, that Agent Adam Blane -- who sought the relevant search warrant, participated in the search of the residence, and ultimately arrested Kennedy -- was aware of Kennedy's criminal history months in advance of the search. While Kennedy asserts that "no [other] law enforcement officer who found or seized [the

items] knew of [his] prior felony conviction," this assertion lacks any citation to the record, and we have found nothing in the materials before this Court to support such a conclusion. Instead, the hearing transcript reflects that it was Agent Blane's colleague who obtained Kennedy's criminal history and that Kennedy's status as a felon was included in the warrant application that was ultimately signed by the magistrate judge; thus, Kennedy's criminal past was no secret, and it is reasonable to conclude from the evidence presented below that officers executing the search warrant were aware that Kennedy was, in fact, a felon.

Given the officers' knowledge of Kennedy's status as a convicted felon -- coupled with the extensive evidence of both drug sales and dog fighting at the house -- the incriminating character of the firearms, ammunition, and body armor were immediately apparent, that is, law enforcement had probable cause to believe that the items were either evidence or contraband. See *Folk*, 754 F3d at 911-912 (I) (C) (2). See also *United States v. Rodriguez*, 711 F3d 928, 936-937 (II) (A) (3) (8th Cir. 2013); *United States v. Smith*, 918 F2d 1501, 1509 (II) (11th Cir. 1990). Accordingly, the trial

court properly denied Kennedy's motion to suppress.[5]

3. Next, Kennedy argues that the "trial court erred when it overruled [his] objection to the introduction of ammunition and body armor." Kennedy argues that this evidence was irrelevant to the charges before the jury, see OCGA § 24-4-402, and unfairly prejudicial, see OCGA § 24-4-403. There is no reversible error.

At trial, the State presented testimony and photographs related to the body armor, as well as to the various firearms and ammunition found throughout Kennedy's residence; the State *also* adduced the actual firearms, ammunition, and body armor. In response, Kennedy lodged general objections to the admission of some of this evidence, namely, the actual body armor, the "Wolf" brand ammunition, and photographs of the "Wolf" brand ammunition. His objections were overruled, and Kennedy now challenges those rulings on appeal; we review these rulings for abuse of discretion. See *Harris v. State*, 314 Ga. 238, 264 (3) (a) (875 SE2d 659) (2022). That

---

[5] Kennedy argues, without citation of authority, that "in no manner is the possession of ammunition or body armor illegal." However, it is unlawful under Georgia law for an individual to wear body armor while selling marijuana, see OCGA § 16-11-160 (a) (2) (B) (ii). Further, even if we were to sidestep consideration of federal law prohibiting felons from possessing ammunition, see 18 U. S. C. 922 (g) (1), the officers searching the house certainly had probable cause to believe that the ammunition was evidence of Kennedy's unlawful possession of firearms as a convicted felon.

17

said, "[e]rror shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." OCGA § 24-1-10.

As we understand his argument, Kennedy is challenging only the admissibility of the actual body armor and "Wolf" brand ammunition. Presuming for the sake of this opinion that these arguments are properly preserved for ordinary appellate review,[6] any possible error is harmless. As explained above, the State presented both testimony and photographic evidence of the body armor, to which there was no objection; further, regarding the ammunition, the State presented testimony concerning the Wolf brand ammunition, and offered testimony, photographs, and physical evidence relating to other ammunition found in Kennedy's residence to which, again, there was no objection. Thus, even in the absence of the admission of the physical body armor and actual Wolf ammunition, the jury was already familiar

---

[6] Kennedy objected to the introduction of the actual body armor, but he failed to articulate a legal basis for the objection, arguing only "I don't see why we have to introduce the actual physical body armor. That's not even why we're here." Likewise, though Kennedy objected to the introduction of the "Wolf" brand ammunition, he argued only that it was irrelevant; however, he did not make a Rule 403 argument. Additionally, while Kennedy objected to photographs of the Wolf brand ammunition below, he does not appear to continue that challenge on appeal. Finally, Kennedy does not explain why he challenged only the Wolf brand ammunition and no other ammunition discovered at the residence, and the basis for this challenge is not immediately apparent in the record.

18

with these items. Finally, the evidence against Kennedy was strong as to each of the charged offenses. Accordingly, it is highly probable that any possible error in admitting the actual body armor or ammunition "did not contribute to the verdict." (Citation and punctuation omitted.) *Anglin v. State*, 302 Ga. 333, 341 (6) (806 SE2d 573) (2017). See also *Neal v. State*, 355 Ga. App. 125, 131 (1) (843 SE2d 11) (2020) (recognizing that "[e]vidence which is cumulative of other legally admissible evidence of the same fact, renders harmless admission of incompetent evidence" (citations and punctuation omitted)).

*Judgment affirmed. Dillard, P. J., and Rickman, J., concur.*