A10A1971. THE STATE v. DRIGGERS.
(702 SE2d 925)

ANDREWS, Presiding Judge.

The State of Georgia takes this appeal from the trial court's grant of James Driggers's motion to suppress statements taken and drugs, paraphernalia, and cash found in a police search of the house to which Driggers had taken his girlfriend by force. The State argues that police had the authority both to enter the house for the purpose of apprehending Driggers and to reenter for the purpose of taking the victim's written statement, at which time they also discovered a part of the physical evidence at issue. We find that although police had authority to enter the house for the purpose of apprehending Driggers, their subsequent reentry was illegal. We therefore affirm.

Where the evidence at a hearing on a motion to suppress is uncontroverted and no question of credibility is presented, we review the trial court's application of the law to these undisputed facts de novo. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). As

---

[8] See *Jackson v. State*, 301 Ga. App. 863, 865 (690 SE2d 195) (2010).
[9] See *Hooker v. State*, 278 Ga. App. 382, 383 (1) (629 SE2d 74) (2006).

to questions of fact and credibility, however, we construe the evidence most favorably to the upholding of the trial court's findings and judgment, which must be accepted unless clearly erroneous. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

So viewed, the record shows that Driggers and the victim and their children were living at 402 Mount Moriah Road in Auburn when, on April 18, 2008, police arrested Driggers there for driving under the influence. At that time, Sergeant Ulrich of the Auburn Police Department observed that Driggers was verbally abusive to the victim. Shortly afterward, the victim left the Mount Moriah house to stay at her mother's.

Eight days later, on the evening of April 26, 2008, a friend of the couple called police with a report that Driggers had dragged the victim by force out of the friend's house and was taking her back to the Mount Moriah house. The friend told police that he was concerned about the victim's welfare and asked that they check on her. Police then went to the Mount Moriah house, heard voices inside, and knocked on the door. The victim answered the door visibly upset and disheveled, expressed relief at the officers' arrival, and immediately came outside onto the screened-in porch.

Driggers testified that the victim left the friend's house voluntarily. When police knocked on his door, he told the victim to answer it. When she did so and exited onto the porch, he went to the door and told the officers that he did not want officers in his house. Two officers then entered the house and forced him to stay inside with them.

The victim told Ulrich, who remained with her outside, that Driggers had entered the friend's house uninvited, dragged her out of a bathroom where she had been hiding, grabbed her by the hair, and forced her into a car. The victim also told police that Driggers struck her en route to the Mount Moriah house and threatened to kill them both by driving the car into a tree. Once they arrived, the victim said, Driggers hit her again and forced her to take off her clothes and lie on the floor "so that she would know what it felt like" when he had been arrested.

On hearing the victim's account, and noting her disheveled appearance, the first officer opened the door of the house and instructed the other officers to place Driggers under arrest. As police escorted him to the police car, Driggers again refused consent to search the house. Driggers testified that the lease and the utilities of the house were in his name.

After Driggers left for the police station, Ulrich and the victim entered the house for the purpose of taking the victim's statement because there was "nowhere on the front porch area for her to do that." As they sat in the living room around a coffee table, Ulrich saw a bottle of mixed pills, including what he thought was Xanax, on top

of a lamp base. On questioning, the victim confirmed that Driggers abused Xanax and said that he also smoked and sold marijuana, which she thought would be located in the bathroom. On the basis of the bottle of mixed pills, which Ulrich immediately seized, as well as the victim's statement (not included in the record before us), police obtained and executed a search warrant (also missing from the record), resulting in the seizure of two bags of marijuana, two sets of scales, and an unspecified amount of cash.

Driggers moved to suppress both the statements and the physical evidence gathered at the house. After a hearing, the trial court held that police were "not responding to exigent circumstances"; that Driggers was the sole occupant of the house; that he refused consent to search it; and that the victim was not a resident of the house and did not have authority to consent to a search. Concluding that Ulrich's entry into the house was thus illegal, the trial court suppressed both the victim's statements concerning drugs, paraphernalia, and money, as well as the physical evidence itself.

Given the trial court's finding that the police reasonably believed that the victim was being held against her will, this appeal poses the question whether this reasonable belief justified not only their initial entry into the Mount Moriah house, but also Ulrich's reentry after Driggers's refusal of consent and departure in police custody, and thus the taking of the victim's statements concerning Driggers's drug use, the seizure of the pill bottle Ulrich saw in the living room, and the evidence taken in the course of executing the warrant.

1. "It has been repeatedly held that reasonable concern for a victim's welfare justifies a warrantless entry." *Lindsey v. State*, 247 Ga. App. 166, 168 (1) (543 SE2d 117) (2000). Specifically, an emergency call concerning domestic violence in progress provides the exigent circumstances sufficient to justify a warrantless entry at the identified location for the purpose of apprehending an attacker. *Lord v. State*, 297 Ga. App. 88, 92 (1) (a) (676 SE2d 404) (2009).

The undisputed evidence here showed that the officers had received a report that Driggers had abducted the victim; that they proceeded to the address to which Driggers had reportedly taken her; and that the visibly upset and disheveled victim opened the door and came out onto the porch. As the trial court found, these facts establish the officers' reasonable belief that Driggers had kidnapped the victim and was still inside the house. Even if the victim may have been momentarily out of danger as soon as she came out onto the porch, her appearance at the door of the house in this condition was sufficient to justify a warrantless entry into the house for the purpose of Driggers's arrest. *Lord*, 297 Ga. App. at 89-92 (1).

2. However, because Ulrich re-entered the house without a

warrant, valid consent, or exigent circumstances, both the statements taken and the physical evidence he saw inside must be suppressed.

(a) "It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." (Punctuation omitted.) *Welsh v. Wisconsin*, 466 U. S. 740, 748 (104 SC 2091, 80 LE2d 732) (1984). Driggers testified that the home and all its utilities were in his name, and the trial court expressly found that the victim was no longer a resident of the house. Ulrich testified that he could not recall asking the victim for consent to enter, and Driggers's testimony established that both before and at the time of his arrest, he told police not to enter the house. Even if the victim had possessed the authority to and had actually granted consent, it would not have been valid because where two residents are present and one denies consent, police may not enter. *Georgia v. Randolph*, 547 U. S. 103, 122-123 (126 SC 1515, 164 LE2d 208) (2006). It follows that Ulrich did not have consent to enter Driggers's house.

(b) We cannot assume that the victim's need for assistance justified Ulrich's re-entry for the purpose of taking her statement in the living room because the exigent circumstances authorizing entry for the limited purpose of effecting Driggers's arrest had expired. An officer's conduct immediately after a legal entry "must be carefully limited to achieving the objective which justified the entry[:] the officer may do no more than is reasonably necessary to ascertain whether someone is in need of assistance and to provide that assistance." LaFave, Search and Seizure, § 6.6 (a), p. 468 (4th ed. 2004). The victim was out of danger by the time Driggers was placed in the police car, and there was no risk that evidence would be destroyed between Driggers's apprehension and the police's return to the house with a warrant. The mere convenience of having a hard surface on which to sign a statement bears an insufficient relation to the exigent circumstances under which police entered legally — that is, to arrest Driggers and, in doing so, to protect the victim from him. It follows that Ulrich's entry into the house was illegal. See *State v. Ealum*, 283 Ga. App. 799, 802 (643 SE2d 262) (2007) (affirming grant of motion to suppress where State failed to show that an emergency justified a warrantless entry); compare *Lord*, 297 Ga. App. at 92 (entry into house after defendant's arrest was authorized for the purpose of locating a victim "likely still in or near the house" and "probably in need of immediate medical attention").

3. The fruits of an illegal search or arrest "should be suppressed when they bear a significantly close relationship to the underlying illegality." (Punctuation omitted.) *State v. Gravitt*, 289 Ga. App. 868, 871 (2) (b) (658 SE2d 424) (2008). Both the statements concerning Driggers's drug use and the drugs, paraphernalia, and money seized

were obtained as a direct result of Ulrich's illegal presence in the living room, where he saw the bottle of mixed pills in plain view and began to question the victim about Driggers's drug use. It follows that the trial court did not err when it suppressed this evidence as "fruit of the poisonous tree." (Punctuation omitted.) Id. (affirming grant of motion to suppress).

*Judgment affirmed. Ellington and Doyle, JJ., concur.*

DECIDED NOVEMBER 17, 2010.

*J. Bradley Smith, District Attorney, Mary E. Forwood, Assistant District Attorney*, for appellant.

*Cowsert & Avery, William S. Cowsert, Michael S. Broun II*, for appellee.