**FIFTH DIVISION
MCFADDEN, P. J.,
GOBEIL and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 28, 2023**

# In the Court of Appeals of Georgia

A22A1453. THE STATE v. WOOD et al.

McFADDEN, Presiding Judge.

Garrett Wood and Amber Carter were charged by indictment with trafficking methamphetamine and other drug offenses. They filed motions to suppress evidence seized from their hotel room after law enforcement officers responded to a 911 call requesting help for a medical emergency. The trial court granted the motions to suppress, finding that after the medical emergency had been resolved, there were not exigent circumstances authorizing the officers' warrantless re-entry and search of the room. The state appeals, challenging the trial court's suppression order. Because the trial court did not abuse its discretion, we affirm.

1. *Facts.*

"[O]n an appeal from the grant or denial of a motion to suppress, appellate courts must focus on the facts found by the trial court in its order, as the trial court sits as the trier of fact." *Caffee v. State*, 303 Ga. 557, 559 (1) (814 SE2d 386) (2018) (citation, punctuation, and emphasis omitted). Moreover, "evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous." *Harris v. State*, 298 Ga. 588, 590 (1) (783 SE2d 632) (2016) (citations and punctuation omitted).

Here, the trial court found that on November 2, 2020, Carter called 911 to report that Wood had possibly overdosed and needed emergency services at their hotel room in Villa Rica, Georgia. Villa Rica Police Officer Rachel Seager arrived at the scene, saw Wood lying unresponsive on the hotel room floor, and began providing emergency care to him. Carter told Officer Seager that Wood had used methamphetamine the night before and that orange pills lying on a nightstand were the prescription drug Flexeril. Emergency medical technicians arrived a few minutes later, took over providing medical assistance to Wood, and carried him out of the room.

2

Officer Seager, who had left the hotel room when Wood was removed, returned to the room, began questioning Carter, and observed a bag containing residue of suspected methamphetamine. Officer Seager left the room again and spoke to her superior officer, Corporal Spencer Crawford, who advised her that they could not arrest anyone based on the 911 call.[1] Officer Seager nevertheless went back into the room; conversed further with Carter; and asked another officer who was also inside the room, Officer Chase Gordy, to take pictures and to open a cigarette box on the nightstand. Officer Gordy opened both the cigarette box and a knotted black bag that was on the nightstand, finding suspected methamphetamine inside the black bag.

Officer Seager reported the black bag's contents to Corporal Crawford, but he again instructed her that as a matter of law they could not do anything. Officer Seager returned to the hotel room, and Officer Gordy, who was still inside the room, began opening other bags in the room. Officer Seager then placed Carter under arrest and moved her to the officer's patrol vehicle. Officers continued searching the hotel room, finding a blow torch, tubing, and two magnetic boxes under a blanket.

---

[1] The trial court noted that under Georgia's 911 medical amnesty law, OCGA § 16-13-5, callers seeking medical assistance for a drug overdose may not be arrested or prosecuted for possession of a controlled substance if the aggregate weight of a solid substance is less than four grams.

3

Officer Seager went to her patrol vehicle and asked Carter if the items found under the blanket were used for a meth lab, but Carter said that there was no such lab and that the items were used for smoking methamphetamine. Corporal Crawford contacted drug task force agents, who came to the scene and entered the hotel room. The task force agents confirmed that there was no active meth lab, obtained and executed a search warrant for the hotel room, and seized methamphetamine and other items from the room. Wood and Carter were subsequently charged with multiple controlled substances violations.

2. *Exigent circumstances.*

The state argues that exigent circumstances justified the officers' warrantless searches of the hotel room. We disagree.

As an initial matter, we note that the state has not contested that Wood and Carter "ha[d] a constitutionally-protected reasonable expectation of privacy in [their hotel] room, and thus the Fourth Amendment provides [them] the same protection as [they] would have for [their] private home[s]." *Crider v. State*, 336 Ga. App. 83, 86 (1) (b) (783 SE2d 682) (2016) (citation omitted), disapproved in part on other grounds in *Hill v. State*, 360 Ga. App. 143, 146 n. 4 (860 SE2d 893) (2021). See also

4

*State v. Hamby*, 317 Ga. App. 480, 482 (731 SE2d 374) (2012) (defendants had a reasonable expectation of privacy in their hotel room).

> The Fourth Amendment proscribes all unreasonable searches and seizures, and searches conducted without prior judicial approval are per se unreasonable under the Fourth Amendment, subject to specifically established and well-delineated exceptions. One such exception to the Fourth Amendment's warrant requirement, as recognized by the United States Supreme Court, is that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. This is so because the need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.

*Tidwell v. State*, 312 Ga. 459, 464-465 (2) (863 SE2d 127) (2021) (citations and punctuation omitted).

In this case, it is undisputed that Officer Seager's initial warrantless entry into the hotel room was lawful since she was responding to the 911 call and entered in order to render emergency assistance to Wood. Indeed, Wood concedes that the officer's first entry was reasonable and that it raised no constitutional concerns. See *State v. Driggers*, 306 Ga. App. 849, 851 (1) (702 SE2d 925) (2020) ("'It has been repeatedly held that reasonable concern for a victim's welfare justifies a warrantless entry.' [Cit.]").

5

But once the emergency medical technicians arrived, took over the medical care of Wood, and removed him from the room,

> the exigent circumstances authorizing [the officer's initial] entry for the limited purpose of [rendering emergency aid] had expired. An officer's conduct immediately after a legal entry must be carefully limited to achieving the objective which justified the entry: the officer may do no more than is reasonably necessary to ascertain whether someone is in need of assistance and to provide that assistance.

*Driggers*, supra at 852 (2) (b) (citation and punctuation omitted). As the trial court found, Officer Seager even admitted during her testimony that her obligation to render aid to Wood ceased when the emergency medical personnel arrived and she understood that her job with respect to the incident was complete after her first conversation with Corporal Crawford.

Nevertheless, Officer Seager re-entered the hotel room after that initial emergency had expired and officers conducted warrantless searches of the room. Since the medical emergency which authorized the initial warrantless entry had expired, "even if [the] officers ha[d] probable cause, absent exigent circumstances or proper consent, [the subsequent] warrantless searches and seizures within [the hotel room] by [the] officers . . . [were] presumptively unreasonable." *Arp v. State*, 327 Ga. App. 340, 342 (1) (759 SE2d 57) (2014). The state makes no claim that the officers

6

obtained consent to search the hotel room. And as found by the trial court, there was no evidence of any such consent. So only the existence of exigent circumstances could have justified the officers in entering and searching the hotel room without a warrant.

"Such exigent circumstances include where an officer is in hot pursuit of a fleeing felon, where an officer reasonably fears the imminent destruction of evidence if entry into the residence is not immediately effected, and where an officer reasonably perceives that a suspect within the dwelling poses a risk of danger to the police or others." *Edwards v. State*, 357 Ga. App. 396, 400 (2) (850 SE2d 837) (2020) (citation and punctuation omitted). Here, however, the state has failed to show the existence of any such exigent circumstances. The state argues that the discovery of suspected meth lab items under the blanket posed a risk of danger to the police or others and thus justified the warrantless entry and search of the room. But that discovery occurred after the officers were unlawfully inside the room, and the undisputed evidence shows that there was in fact no active meth lab in the hotel room. See *Edwards*, supra at 401 (2) (a) (mere inchoate and unparticularized suspicion of danger is insufficient to support a warrantless search). We therefore affirm the trial court's conclusion that the state's argument "ignores fifteen minutes of unlawful

police presence in the hotel room after [emergency medical services] assumed the duty of saving Defendant Wood's life" and "thus any evidence obtained as a result of law enforcement's prolonged presence was obtained unlawfully."

3. *Inevitable discovery.*

The state contends that the evidence seized after law enforcement officers' unlawful warrantless entries and searches of the hotel room was nevertheless admissible under the inevitable discovery exception to the exclusionary rule because the drug task force agents later obtained a search warrant for the room. But for this exception to apply, "there must be a reasonable probability that the evidence in question would have been discovered by lawful means, and the prosecution must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the illegal conduct." *Mobley v. State*, 307 Ga. 59, 76 (4) (b) (834 SE2d 785) (2019) (citation and punctuation omitted). "This active pursuit rule . . . prevent[s] application of the inevitable discovery doctrine from emasculating the search warrant requirement of the Fourth Amendment." *Edwards*, supra at 399 (1) (citation and punctuation omitted).

8

A "search warrant issued upon probable cause may be a lawful means to discover evidence." *Mobley*, supra (punctuation omitted). But the record in this case does not show that officers were actively pursuing a search warrant at the times they entered the hotel room and began searching it without a warrant.

> Absent proof that the officers were actively pursuing a warrant at [those] point[s] in time, the mere fact that [drug task force agents] actually obtained a warrant [later that] day is not enough to bring this case within the inevitable discovery exception. Indeed, because a valid search warrant nearly always can be obtained after a search has occurred, allowing law enforcement to use a warrant from after-the-fact to justify an earlier search would threaten to vitiate the warrant requirement.

Id. at 76-77 (4) (b) (citations and punctuation omitted). The state has therefore "failed to lay an evidentiary foundation for the application of the inevitable discovery exception." *Edwards*, supra at 400 (1).

4. *Immunity under OCGA § 16-13-5*.

The state's final enumeration of error, that the immunity from prosecution provided by OCGA § 16-13-5 does not apply to the indicted charges in this case, presents nothing for review since the trial court made no such immunity ruling. Rather, the only ruling before us is the trial court's order suppressing evidence based on the unlawful warrantless search of the hotel room. "Inasmuch as we are a court for the correction of errors, we do not consider issues which were not raised below and

9

ruled on by the trial court." *State v. Cook*, 337 Ga. App. 205, 206 (786 SE2d 876) (2016) (citation and punctuation omitted).

*Judgment affirmed. Gobeil and Land, JJ., concur*.